In Re: Victor FOGNANI and Anna Marie Fognani, Plaintiffs,

v.

Robert S. YOUNG and Southern Colorado Clinic, P.C., Defendants.

No. 04SA303.

Supreme Court of Colorado, En Banc.

Feb. 14, 2005.

Law Offices of J.E. Losavio, Esq., J.E. Losavio, Stephen L. Cornetta, Pueblo, Fognani Guibord & Homsy, LLP, John D. Fognani, Brian D. Gonzales, Kristina I. Mattson, Denver, for Plaintiffs.

Cooper & Clough, P.C., Larry S. McClung, Deanne C. Potestio, Lisanne N. Leasure, Denver, for Defendants.

Justice KOURLIS delivered the Opinion of the Court.

Victor and Anna Marie Fognani ("the Fognanis"), are plaintiffs in a malpractice action pending in Pueblo County District Court. The Fognanis were represented in that action by John D. Fognani, Esq. ("Mr. Fognani") and Fognani Guibord & Homsy, LLP ("FGH"). The Fognanis endorsed their son, Mr. Fognani, a named partner at FGH, to testify as a fact witness in their suit against Robert S. Young, M.D., and Southern Colorado Clinic, P.C. (collectively "Dr. Young"). Upon Dr. Young's motion, the trial court consequently disqualified Mr. Fognani and

FGH from representing the Fognanis in the lawsuit. The court concluded that Mr. Fognani's dual role as counsel and witness would prejudice both parties, confuse the jury, and taint the trial and the legal system in contravention of Colorado Rules of Professional Conduct 3.7 (hereinafter "Colo. RPC 3.7" or "Rule 3.7").

The Fognanis petitioned pursuant to C.A.R. 21 for exercise of our original jurisdiction. We issued rule to show cause and now make the rule absolute in part, discharge it in part and remand. We hold that because the record demonstrates that Mr. Fognani is likely to be a necessary witness in this case, the trial court properly exercised its discretion in disqualifying him from serving as an advocate at trial. Because the advocate-witness rule is directed at the attorney's trial activity, we limit the scope of that disqualification to advocacy at trial. The trial court, however, retains the discretion to determine whether Mr. Fognani's participation in pretrial litigation activity would become known to the jury and would thus undermine the purpose of the rule.

The record does not permit us to determine whether the trial court appropriately disqualified FGH as well as Mr. Fognani. The trial court appears to have disqualified the firm because of its association with Mr. Fognani. Our Rule, Colo. RPC 3.7, does not mandate automatic disqualification of a disqualified attorney's law firm. Rather, the Rule directs the court to look to two other Rules: 1.7 and 1.9. Since it appears that the court disqualified FGH based solely upon Mr. Fognani's relationship with the firm, we reverse that disqualification order and remand for proper consideration of the appropriate criteria.

We uphold the trial court's disqualification of Mr. Fognani from representation of the plaintiffs at trial. We remand to the trial court to determine the scope of that disqualification in pretrial activities, and to determine whether FGH need also be disqualified from its representation of the plaintiffs at trial.

# I. BACKGROUND

The underlying lawsuit is the product of alleged complications resulting from hip replacement surgery and postoperative care Dr. Young provided to Victor Fognani in 1997. The Fognanis assert negligence by Dr. Young in his failure to diagnose and properly treat a postoperative life-threatening infection.

The Fognanis filed their lawsuit in March 1999, retaining Daniel Patterson, Esq. ("Patterson") to represent them. Subsequently, Patterson submitted C.R.C.P. Rule 26(a) disclosures endorsing the Fognanis' son, Mr. Fognani, as a fact witness. The document disclosed that Mr. Fognani had information relating to his father's past medical condition, his father's care and treatment by Dr. Young, conversations with Dr. Young regarding his father's conditions as well as other issues in the lawsuit.

Patterson withdrew in April 2002. Over a year later, in 2003, FGH and the Law Offices of J.E. Losavio of Pueblo (the "Losavio Firm") entered appearances as counsel for the Fognanis. Since then, FGH has handled substantially all pretrial matters and intended to serve as the Fognanis' lead counsel. Papers filed with the court listed Mr. Fognani as one of three FGH attorneys representing the Fognanis. The matter was scheduled for trial in September 2004.

In May 2004, FGH delivered a letter to counsel for Dr. Young maintaining that Mr. Fognani was privy to certain inculpatory admissions by Dr. Young:

> Dr. Young stated to [Victor] Fognani's son, John Fognani, a long-standing and well-respected member of the Colorado bar, that he was 'sorry about your father's situation' and that things might have turned out better had [Dr. Young] been at a major hospital and 'more up to date' on current treatment options.

Relying on these statements, FGH increased the Fognanis' settlement demand.

Dr. Young denied making any admissions to Mr. Fognani. On May 10, 2004, he moved to disqualify Mr. Fognani and FGH, on the basis of Mr. Fognani's potential role as a fact witness. Dr. Young cited various provisions

of the Colorado Rules of Professional Conduct as requiring the attorney's disqualification and the consequent disqualification of the firm. The motion to disqualify, among other things, asserted that the continued representation of the Fognanis by FGH would prejudice both parties.

On August 11, 2004, the trial court granted Dr. Young's motion to disqualify FGH and Mr. Fognani, holding that the firm could continue to represent the Fognanis only if it withdrew the endorsement of Mr. Fognani as a fact witness. The court remarked, "There is a substantial risk that the jury will be confused by an advocate also appearing as a witness." The court was concerned, in addition, that Mr. Fognani's dual role would taint the trial and the legal system by "putting both parties in the awkward and unseemly position generally anticipated by [Colo. RPC] 3.7." The trial court acknowledged that the disqualification would work a hardship on the Fognanis. It concluded, however, that the Fognanis were aware of the potential for such hardship from the moment Mr. Fognani and FGH decided to enter their appearance in this case, and "could not now avoid the consequences of their decision." The court was persuaded, also, that the continued representation by the Losavio Firm would serve to negate any hardship resulting from the disqualification. It then ordered the Fognanis to respond within ten days concerning their intent to maintain Mr. Fognani as a witness.

FGH continued representing the Fognanis based on their understanding that the court had only disqualified Mr. Fognani. On August 23, 2004, the Fognanis informed the court that they intended to preserve their endorsement of John D. Fognani as a witness and sought clarification of the court's order regarding the disqualification of FGH. On August 24, the court issued an order stating that "the firm is disqualified by virtue of the order of August 11, 2004."

The Fognanis petitioned for review of the trial court's order.

## II. ORIGINAL JURISDICTION

Exercise of our original jurisdiction under C.A.R. 21 is entirely within our discretion. *Lazar v. Riggs*, 79 P.3d 105, 106 (Colo. 2003). Although we have declared that original proceedings are not devices for circumventing appeals, *Varner v. Dist. Court*, 618 P.2d 1388, 1390 (Colo.1980), we have accepted C.A.R. 21 relief as an appropriate remedy for trial court abuse of discretion where an appellate remedy would be inadequate, *Lazar*, 79 P.3d at 106; *People v. Dist. Court*, 953 P.2d 184, 186 (Colo.1998). This court has not previously assumed original jurisdiction over the disqualification of private attorneys and their law firms in a civil matter. We have, however, accepted original jurisdiction under similar circumstances for public law firms, such as district attorneys, attorney generals, and public defender offices, and for disqualification of private counsel and firms in criminal matters. *See, e.g., People v. C.V.*, 64 P.3d 272 (Colo.2003) (concerning disqualification of district attorney's office and staff).[1] In *C.V.*, we determined the exercise of original jurisdiction to be appropriate because the ruling "may have a significant impact on a party's ability to litigate the merits of a controversy." *Id.* at 275.

Exercise of our original jurisdiction is similarly appropriate in this civil case. Resolving the issue at this point in the proceedings could avoid duplicative and expensive proceedings.

## III. ANALYSIS

### A. Attorney Disqualification

We have repeatedly acknowledged that the disqualification of counsel is a mat-

---

1. For other C.A.R. 21 reviews of disqualification of district attorney offices and staff, see *People v. Palomo*, 31 P.3d 879 (Colo.2001); *People ex rel. Sandstrom v. Dist. Court*, 884 P.2d 707 (Colo. 1994); *Pease v. Dist. Court*, 708 P.2d 800 (Colo. 1985); public defenders office and/or staff, see *People v. Harlan*, 54 P.3d 871 (Colo.2002); *Rodriguez v. Dist. Court*, 719 P.2d 699 (Colo.1986); *Williams v. Dist. Court*, 700 P.2d 549 (Colo. 1985); attorney general office and staff, see *People ex rel. Woodard v. Dist. Court*, 704 P.2d 851 (Colo.1985); private attorney and firm in criminal matters, see *People ex rel. Peters v. Dist. Court*, 951 P.2d 926 (Colo.1998); *Cleary v. Dist. Court*, 704 P.2d 866 (Colo.1985).

ter largely within the trial court's discretion. *See People v. Palomo*, 31 P.3d 879, 882 (Colo. 2001); *People ex rel. Peters v. Dist. Court*, 951 P.2d 926, 931 (Colo.1998); *People v. Garcia*, 698 P.2d 801, 806 (Colo.1985); *Williams v. Dist. Court*, 700 P.2d 549, 553 (Colo.1985).

■■■ Beyond that initial deference, however, are a number of additional factors. For example, courts have historically been highly cynical of motions to disqualify opposing counsel, noting that such motions are often dilatory or tactical devices. *Parke-Hayden, Inc. v. Loews Theatre Mgmt. Corp.*, 794 F.Supp. 525, 527 (S.D.N.Y.1992); *Greenebaum–Mountain Mortgage Co. v. Pioneer Nat'l Title Ins. Co.*, 421 F.Supp. 1348, 1352 (D.Colo.1976); *H.H.B.K. 45th St. Corp. v. Stern*, 158 A.D.2d 395, 396, 551 N.Y.S.2d 517 (N.Y.App.Div.1990); *Comden v. Superior Court*, 20 Cal.3d 906, 145 Cal.Rptr. 9, 576 P.2d 971, 975 (1978). Accordingly, the moving party has the burden to establish grounds for disqualification. *See People ex rel. Woodard v. Dist. Court*, 704 P.2d 851, 853 (Colo.1985); *Garcia*, 698 P.2d at 805. To that end, the opposing counsel cannot be disqualified on the basis of speculation or conjecture, and disqualification can occur only after facts have been alleged that demonstrate a potential violation of the Rule. *See People ex rel. Woodard*, 704 P.2d at 853 (addressing the Code).

■■■ The question of disqualification culminating from counsel's status as attorney and witness in the same proceeding is premised on the so-called advocate-witness rule, the genesis of which is the subject of much scholarly debate.[2] The rule, stated broadly,

is that counsel cannot maintain dual roles as advocate and witness in the same matter before the same tribunal. *See* Erick G. Luna, *Avoiding A "Carnival Atmosphere": Trial Court Discretion and the Advocate–Witness Rule*, 18 Whittier L.Rev. 447, 451 (1997). Among the multitude of rationales for the rule,[3] we have emphasized that "a lawyer who intermingles the functions of advocate and witness diminishes his effectiveness in both cases." *Williams*, 700 P.2d at 553. We explained, "The client's case is subject to criticism that it is being presented through the testimony of an obviously interested witness who on that account is subject to impeachment, and, of equal importance, placed in the unseemly position of arguing his own credibility to the jury." *Id.* Drafters of the ABA Model Rules recommend similar rationales for the rule; but the drafters also mention the opposing party's interest, noting that combining the roles of advocate and witness can prejudice the opposing party as well as involve a conflict of interest between the lawyer and client. *See Annotated Model Rules of Prof'l Conduct*, R. 3.7 cmt. 1, at 381 (5th ed.2003).

A majority of states have adopted the ABA Model Rules' standard for disqualification of an advocate-witness, while a minority still espouses its predecessor, the ABA Model Code. *See* Van Detta, *supra* note 2, at 285. With minor variations, Colorado has joined the majority of states in adopting the ABA Model Rules, articulated through Colo. RPC 3.7. This court adopted the Rule in 1992; it became effective in 1993, *see* Colo. RPC, 7A C.R.S. (1990 Rpl. Vol.) (1992 Cum.Supp.), and replaced the Code of Professional Conduct.[4]

---

2. For a discussion of the advocate-witness rule's origin and history, see Jeffrey A. Van Detta, *Lawyers as Investigators: How Ellerth and Faragher Reveal a Crisis of Ethics and Professionalism Through Trial Counsel Disqualification and Waivers of Privilege in Workplace Harassment Cases*, 24 J. Legal Prof. 261 (2000).

3. Courts and scholars have disagreed over the goals and underlying rationale for the rule. *See S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 69 N.Y.2d 437, 444 n. 4, 515 N.Y.S.2d 735, 508 N.E.2d 647 (N.Y.1987) (observing considerable difference of opinion).

4. The Colorado Code of Professional Conduct, Rule 3.7's predecessor, codified the advocate-witness rule under DR 5–101(B) as follows:

A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
(1) If the testimony will relate solely to an uncontested matter.
(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

Colo. RPC 3.7(a) prohibits a lawyer from acting as an advocate in a trial if the lawyer is "likely to be a necessary witness," with three enumerated exceptions: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client. We, thus, consider those requirements.

### 1. "Necessary Witness" Analysis

■ In response to the conflicting judicial interpretations of the Model Code standard, the drafters of Model Rule 3.7 chose the words "necessary witness" over the Model Code's phraseology "ought to be called as a witness," which appears in DR 5–101 and 102. *See Healthcrest, Inc. v. Am. Med. Int'l Inc.*, 605 F.Supp. 1507, 1510 (N.D.Ga.1985) (noting conflicting judicial interpretations). Interpretation of "ought to be called" under the Code often reverberated between two strict polar opposite requirements. Some courts imposed disqualification even if the attorney's testimony was minimally useful. *See Supreme Beef Processors, Inc. v. Am. Consumer Indus., Inc.*, 441 F.Supp. 1064, 1068 (N.D.Tex.1977) (holding that the client is entitled to "every scrap of favorable evidence," not just that which is essential to the case). Other jurists strictly interpreted the Code to require disqualification only if the lawyer's testimony was "crucial," "indispensable," "obligatory," or "pivotal." *See* Luna, *supra*, at 445; *accord Wickes v. Ward*, 706 F.Supp. 290, 292 (S.D.N.Y.1989). It appears, however, that the majority of courts read the Code's "ought to be called" language as requiring that the lawyer's testimony be "necessary" or "indispensable" and not just useful. *See* John J. Dalton, *The Advocate–Witness Rule: Problems and Pitfalls*, C641 *ALI–ABA Continuing Legal Education* 313, 317 (1991). Thus, while not requiring that the attorney's testimony be indispensable, by its adoption of the "necessary" language, the Rule places a higher burden on the moving party, signaling the ABA's retreat from the stricter standard that required disqualification if the testimony was even somehow useful. *See* Colorado Bar Association Ethics Comm., Formal Op. 78 (1997) (hereinafter *"CBA, Formal Op. 78 "*) (noting "the 'necessary witness' standard is recognized as requiring 'an even more specific showing of necessity' than the Code").

Rule 3.7 does not dictate any standard for "likely to be a necessary witness," but elsewhere, the ABA has explained that the term "necessary" means "no other witness could testify, and obviates disqualification if the lawyer's testimony is merely cumulative." *See ABA/BNA Lawyers' Manual on Prof'l Conduct* § 61:506 (2002); *see also Religious Tech. Ctr. v. F.A.C.T.Net, Inc.*, 945 F.Supp. 1470, 1480 (D.Colo.1996) (reading "necessary" to mean that testimony must not be merely cumulative, and holding that the court may delay ruling on a motion to disqualify until it can determine whether another witness can testify); *accord Humphrey ex rel. State v. McLaren*, 402 N.W.2d 535, 541 (Minn.1987); *Security Gen. Life Ins. Co. v. Superior Court*, 149 Ariz. 332, 718 P.2d 985, 987 (1986). The Colorado Bar Association's ("CBA's") Ethics Committee endorses that latter interpretation, but, the committee prefers that courts temper it with an ad hoc approach. It explains that the term "necessary witness" cannot be interpreted strictly by reference to evidentiary decisions analyzing when testimony is "necessary." *See CBA, Formal Op. 78, supra.* In its view, allegations that the opposing counsel is a "necessary witness" cannot rest on the mere naming of the attorney; nor however, does the sheer availability of other competent witnesses for the same testimony automatically render a named attorney "unnecessary." *Id.*

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as a counsel in the particular case.

Subject to the same exceptions, DR 5–102(A) required that counsel and his firm, if any, withdraw:
(1) If, after undertaking employment in the contemplated or pending litigation, [he] learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client.

■ Although not binding authority, we approve the committee's approach. Thus, determining whether the moving party has properly demonstrated that opposing counsel is "likely to be a necessary witness" involves a consideration of the nature of the case, with emphasis on the subject of the lawyer's testimony, the weight the testimony might have in resolving disputed issues, and the availability of other witnesses or documentary evidence which might independently establish the relevant issues. *See Comden*, 20 Cal.3d 906, 145 Cal.Rptr. 9, 576 P.2d at 974 (interpreting the Model Code); *see also Kubin v. Miller*, 801 F.Supp. 1101, 1113 (S.D.N.Y.1992) (interpreting the Code to require factors such as "the significance of the matters, weight of the testimony, and availability of other evidence").

At issue in the underlying litigation in this case is the Fognanis' contention that negligence by Dr. Young caused Victor Fognani certain postoperative injuries. That contention is the actual subject of Mr. Fognani's professed testimony. Mr. Fognani's statements are essentially that he spoke with the doctor shortly after the procedure performed on his father. Mr. Fognani attributes to the doctor certain admissions against interest, whereby Dr. Young conceded fault, and even offered an explanation for his alleged surgical miscalculation: that he was not completely abreast of modern treatment measures that would have averted the injuries. These declarations, if proven true, could subject Dr. Young to liability. Dr. Young denies having made the statements. Mr. Fognani, moreover, is the sole identified witness to these statements by the doctor. The facts and circumstances of this case demonstrate that Mr. Fognani is likely to be a necessary witness on his clients' behalf.

The Fognanis argue that the trial court's granting of Dr. Young's motion is premature given that they have not decided that Mr. Fognani will definitely testify.[5] The rule, however, does not require categorical proof that the lawyer will indeed testify at trial. The moving party's burden is complete if he proves that opposing counsel is "likely to be a witness" at trial. The likelihood of that testimony is based, not on the plaintiffs' subjective trial strategy, but rather, on the circumstances of the particular case. We also note that the settlement letter, in which FGH increases the Fognanis' settlement offer with reference to his potential testimony, highlights the fact that the Fognanis viewed Mr. Fognani's testimony as a centerpiece of their case against Dr. Young.

We emphasize that the rationales for the advocate-witness rule are particularly acute in a case such as this. Mr. Fognani's dual role could prejudice his clients in two regards: as the Fognanis' lawyer, he would be impeachable for self interest, and his testimony could be additionally suspect because of his role as his clients' son. Thus, disqualification of Mr. Fognani should enhance his usefulness as a witness for the Fognanis given that he would no longer be subject to impeachment for interest by virtue of his role as advocate. *See Comden*, 20 Cal.3d 906, 145 Cal.Rptr. 9, 576 P.2d at 974.

Lastly, while we do not underestimate jurors' ability to resolve even the most complex cases, we are persuaded that the jury might have trouble distinguishing among Mr. Fognani's multiple roles as advocate, law partner, witness and son.

As noted previously, however, determining whether the lawyer is likely to be a witness at trial does not put the topic of disqualification at end; the lawyer may assume a dual role at trial of the same matter if at least one of three exceptions under Rule 3.7 exists. Because the potential testimony relates neither to an uncontested issue, nor the nature and value of legal services rendered in this case, we proceed to evaluate whether the disqualification would impose a substantial hardship on the Fognanis.

---

5. The Fognanis also argue that the court's disqualification of Mr. Fognani from acting as advocate at trial is premature and unnecessary because they have made no indication that they intended for Mr. Fognani to serve as counsel. As for the question of whether Mr. Fognani will definitely testify at trial, the trial court also need not make any specific finding that Mr. Fognani intended to serve as counsel at trial. It is sufficient that he was serving in that capacity and was likely to be a necessary witness when the motion was filed.

## 2. "Substantial Hardship" Analysis

The rule permits the lawyer to maintain a dual role in the same proceeding if "disqualification would work substantial hardship on the client." *Compare* Colo. RPC 3.7(a)(3), *with* DR 5–101(B)(4) (requiring substantial hardship based on distinctive value of lawyer's service or his firm's). Thus, even if, as we have determined, there is a risk of prejudice to both parties if the attorney is permitted to testify in this case, we must balance the competing interests, affording "due regard" to the effect of disqualification on his clients. *See* Colo. RPC 3.7(a) cmt. 4.

As currently codified, the rule liberalizes the substantial hardship exception by deleting the requirement that the hardship be based on the "distinctive value" of the lawyer's service or that of the firm. *See CBA, Formal Op. 78, supra.* The financial burden on the client of replacing the attorney, if combined with other circumstances, as such, may be sufficient to create an exception. *Id.* But an assertion that the attorney has consumed great resources and expended considerable time in preparation for trial is insufficient alone to defeat disqualification. *See Fed. Deposit Ins. Corp. v. Sierra Resources, Inc.,* 682 F.Supp. 1167, 1171 (D.Colo.1987); *Lumbard v. Maglia, Inc.,* 621 F.Supp. 1529, 1540 (S.D.N.Y.1985). Along those lines, one court has reasoned that to permit an attorney to act as both witness and counsel in the same proceeding simply because of financial hardship to the client would permit attorneys to remain mute when aware of the likelihood of their testimony, "all the while hoping that his adversary will not recognize the problem until the case is well under way." *See Greenebaum–Mountain Mortgage,* 421 F.Supp. at 1353; *see also United States v. Peng,* 602 F.Supp. 298, 303 (S.D.N.Y.1985) (refusing to permit expense and delay routinely incident to disqualification to satisfy the hardship exception, reasoning that such a result "would swallow the rule by providing incentives for counsel to accumulate the financial hardship"); *accord Jackson v. Russell,* 498 N.E.2d 22, 30 (Ind.Ct.App.1986).

Perhaps directed at avoiding such an outcome, Rule 3.7's comment describes as a relevant factor weighing in favor of disqualification, "that one or both parties could reasonably foresee that the lawyer would probably be a witness." Colo. RPC 3.7(a) cmt. 4. Most jurisdictions appear to support this view. *See, e.g., Disciplinary Counsel v. Collins,* 71 Ohio St.3d 310, 643 N.E.2d 1082, 1083 (1994) (reprimanding lawyer for accepting employment when he knew he could be called as witness); *Mentor Lagoons, Inc. v. Teague,* 71 Ohio App.3d 719, 595 N.E.2d 392, 395 (1991) (disqualifying attorney who was aware of conflict and that he would be called by opponent before he accepted employment); *Fed. Deposit Ins. Corp.,* 682 F.Supp. at 1172 (noting lawyer was told by moving party's attorney from onset of litigation that he would be a fact witness).

■ Accordingly, when determining whether the disqualification would impose a substantial hardship on the client, we consider all relevant factors in light of the specific facts before the court, including the nature of the case, financial hardship, giving weight to the stage in the proceedings, and the time at which the attorney became aware of the likelihood of his testimony. In addition, we also consider whether the client has secured alternative representation. *See World Youth Day, Inc. v. Famous Artists Merchan. Exch., Inc.,* 866 F.Supp. 1297, 1304 (D.Colo.1994).

Currently, the parties are in the midst of pretrial litigation. The Fognanis' original counsel withdrew in 2002 and Mr. Fognani entered his appearance as their counsel a year later, along with the Losavio Firm. The record further discloses that Mr. Fognani and two FGH associates have handled substantially all pretrial matters.

This is not, however, a case in which the attorney unexpectedly happened upon the relevant information after undertaking the clients' representation. The record indicates that the likelihood of Mr. Fognani's status as a witness was apparent before his parents' lawsuit was even filed, and certainly before he entered his appearance. He was identified as a material witness in the Fognanis' initial disclosures, made when the Fognanis were represented by Patterson.

Also, the record reveals that the Losavio Firm has been and will continue to represent

the Fognanis in this case. We agree with the trial court that such representation decreases the likelihood of substantial hardship. Despite their claim of pecuniary hardship, the Fognanis have not shown that the Losavio Firm will be unable to conduct the trial even if Mr. Fognani (and his entire firm)[6] is disqualified.

Lastly, this is also not a case in which the clients had a longstanding or continuing relationship with the attorney as their counsel. *See Greenebaum–Mountain Mortgage Co.*, 421 F.Supp. at 1352 (explaining that the hardship incurred from disqualification of longstanding corporate counsel might weigh in favor of permitting the attorney to maintain a dual role). As noted, the Fognanis were initially represented by different counsel and have been represented by Mr. Fognani for only one year. Considering the specific facts and circumstances of this case, the trial court did not abuse its discretion in rejecting the Fognanis' substantial hardship claims.

Cumulatively, then, we find ample justification in the record for the disqualification of Mr. Fognani from representation of the Fognanis at trial. We turn, then, to the scope of such disqualification.

### 3. Scope of Attorney Disqualification

The Fognanis urge that the trial court abused its discretion by its refusal to permit Mr. Fognani to participate in pretrial litigation. Colo. RPC 3.7(a) is directed at the lawyer's courtroom activity, preventing the lawyer from acting as an "advocate at trial." Prior to the ABA's adoption of Model Rule 3.7, some courts refused to read the term "trial" literally to apply only to proceedings conducted before a jury. *See, e.g., Gen. Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 716 (6th Cir.1982) (opining that because "trial" applied to all related proceedings, the ABA could not have intended that the lawyer retain control of everything but the literal "trial").

Following codification of the Rule, both the ABA Committee on Professional Responsibil-

ity and the CBA Ethics Committee adopted the view that because the rule prevents the witness from "act[ing] as an advocate at trial," the disqualified lawyer may play a role in the representation short of trial with the client's consent. *See CBA, Formal Op. 78, supra;* ABA Comm. On Ethics and Prof'l Responsibility, Informal Op. 89–1529 (1989) (hereinafter *"ABA, Informal Op. 89–1529 "*) (requiring consent after consultation and reasonable belief that the representation will not adversely affect the client's interest). The CBA Committee also recommends that consent by the client be obtained and cautions that the lawyer must not be "myopic" when assessing whether to proceed with pretrial advocacy. *CBA, Formal Op. 78, supra.* It explains that the limited prohibition of Rule 3.7 should not be construed as providing an open invitation to serve as pretrial counsel. *Id.*

 Courts generally permit an attorney disqualified on this basis to participate fully in pretrial litigation activities such as strategy sessions, pretrial hearings, mediation conferences, motions practice and written discovery. *See, e.g., World Youth Day, Inc.,* 866 F.Supp. at 1303; *Caplan v. Braverman,* 876 F.Supp. 710, 712 (E.D.Pa.1995); *Culebras Enterprises Corp. v. Rivera–Rios,* 846 F.2d 94, 100 (1st Cir.1988); *United States v. Castellano,* 610 F.Supp. 1151, 1167 (S.D.N.Y. 1985). These courts reason that the purposes served by the advocate-witness rule are not greatly undermined by the lawyer's participation in the pretrial stages of the suit. *See Culebras Enterprises Corp.,* 846 F.2d at 100.

However, although courts generally agree with the ABA's opinion that disqualification does not prevent participation in pretrial matters, like the CBA Ethics Committee, some courts caution against permitting the lawyer unqualified participation in all pretrial litigation activity. As an example, in *World Youth Day, Inc.,* the United States District Court for the District of Colorado emphasized that since the overriding purpose of the

---

**6.** We discuss later in detail, the impact of Mr. Fognani's disqualification on FGH's continued representation of the Fognanis.

rule is to avoid prejudice associated with jury confusion, the attorney should not participate in any pretrial activity that could be admissible at trial and that would reveal the attorney's dual role to the jury. 866 F.Supp. at 1303. As such, the court held that where the attorney's participation in pretrial deposition could be revealed at trial, the court should bar the attorney from participating in that activity. *Id.* at 1304.

In this case, the trial court issued a broad order disqualifying Mr. Fognani from the trial of this case without specifying the outer limits of that disqualification. We acknowledge the ABA Committee's view that the rule was not intended to prevent the attorney from participating in pretrial litigation activities. *See ABA Informal, Op. 89–1529, supra* (opining that the lawyer who anticipates testifying at trial may participate in discovery and other pretrial proceedings). We also accept the conclusions by other jurisdictions that such activities may include strategy sessions, pretrial hearings, mediation conferences, motions practice and written discovery, or being consulted by the non-testifying counsel. However, we decline to issue a rule that would permit automatic participation by the disqualified attorney in all pretrial litigation. Upon assuring that the client has consented to pretrial representation by the disqualified attorney, the trial court has the discretion to determine whether participation by the attorney in a particular pretrial activity would undermine the purpose of Rule 3.7. Accordingly, if for example, the attorney's dual role in deposition proceedings would likely be revealed at trial, the court may properly limit the attorney's role in that activity. We leave to the trial court upon remand the opportunity to fashion its orders in a way dictated by the facts of this case.

## B. IMPUTED DISQUALIFICATION

■ The next issue we address is the extent to which the disqualification of Mr. Fognani precludes the participation of his firm in the case. In its order of August 11, 2004, the trial court appears to have disqualified FGH automatically solely by virtue of Mr. Fognani's association with the firm. Rule 3.7(b) sets forth the requirement for vicarious disqualification of other lawyers or a law firm associated with the disqualified attorney: "A lawyer shall not act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness *unless the requirements of Rule 1.7 or Rule 1.9 are met.*" (emphasis added). The current Rule is a departure from the automatic disqualification of the lawyer's associates mandated by its predecessor. *See, e.g., Comden,* 145 Cal.Rptr. 9, 576 P.2d at 974 (interpreting the Model Code as requiring automatic vicarious disqualification). Accordingly, under Rule 3.7(b), "disqualification of the advocate-witness is a personal disability that is normally not imputed to the attorney's law firm." *See* Richard F. Hennessey, *Colorado's New Rules of Professional Conduct: A More Comprehensive and Useful Guide for Lawyers,* 21 Colo. Law. 10, 2116 (Oct.1992); *see also Kubin,* 801 F.Supp. at 1114.

The Rule contemplates that if the attorney is disqualified to prevent him "from testifying adversely or detrimentally to the client," the Rules' conflict provisions must be complied with. *See* Hennessey, *supra,* at 2116. Relevantly, Rule 1.7 bars the lawyer from representing a client if the representation may be "materially limited by … the lawyer's own interests," unless "the lawyer believes the representation will not be adversely affected" and "the client consents after consultation." Colo. RPC 1.7(b)(1) & (2).[7] The provisions of 1.7 also apply to the attorney's firm through Rule 1.10, prohibiting lawyers associating in a firm from knowingly representing a client when any one of them practicing alone would be prohibited by 1.7.[8] *See* Colo. RPC cmt. 5.

---

7. Rule 1.9, governing conflict of interest arising from the lawyer's representation of former clients is not implicated.

8. Colo. RPC comment 5 states, "If a lawyer who is a member of a firm may not act as both advocate and witness by reason of conflict of interest, Rule 1.10 disqualifies the firm also."

However, if an advocate is likely to be called as a necessary witness, another non-testifying advocate may appear as trial counsel, unless barred by Rule 3.7(b). The conflict provisions of Rule 1.10 refer to conflicts other than those arising from the advocate-witness context. *See CBA, Formal Op. 78, supra.* Comment 5 admonishes

Colo. RPC 3.7 differs from ABA Model Rule 3.7 in one crucial aspect. The Model Rule provides: "A lawyer *may* act as an advocate at trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." *See Annotated Model Rules, supra,* at 381. (emphasis added). The CBA committee explains that the ABA's approach creates a presumption against vicarious disqualification while our Rule creates an opposite presumption. *See CBA Formal op. 78, supra.* The Committee eschews the ABA approach because of the concern that even if the client is represented by the advocate-witness's partner "there is still a potential conflict of interest which can be serious in such a situation." In that regard, Rule 3.7 comment 5 explains that, for example, the testifying attorney's credibility may be placed in issue because of his association with the firm. *See* Colo. RPC 3.7 Committee Comment; *see also Fed. Deposit Ins., Corp.,* 682 F.Supp. at 1170 (observing that "when the client's case is proffered through the testimony of the trial attorney's partner, the advocate partner must awkwardly argue his testifying partner's credibility"). Thus, Colo. RPC 3.7 contemplates that the firm may not continue its representation if such representation will adversely affect the client or the client refuses to consent. The Rule thereby affords more weight to a client's choice of counsel. *See Freschi v. Grand Coal Venture,* 564 F.Supp. 414, 417 n. 2 (S.D.N.Y.1983) (opining that the changes in Rule 3.7 "appear to be a greater recognition of the importance of the client's own judgment concerning his choice of counsel to represent him").

The client's consent must be objectively reasonable. The Rule provides that "a client's consent cannot be validly obtained in those instances in which a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances of the particular situation." Colo. RPC 1.7(2)(c).

Thus, Rule 3.7 no longer imposes automatic vicarious disqualification of the disqualified

attorney's law firm. As such, the trial court must consider whether the requirements of Rules 1.7 and 1.9 have been met. In this situation, we direct our attention to the requirements of Rule 1.7. The inquiry is two-fold. Here, by reason of their active opposition to the disqualification order, we assume that the firm reasonably believes that its representation of the plaintiffs will not be materially limited by its responsibilities to Mr. Fognani. *See* Colo. RPC 1.7(2)(b)(1). Second, then, is the question of the client's consent to that ongoing representation and whether that consent is objectively reasonable under the circumstances. While the Rule affords deference to the client's wishes in determining whether attorneys associated with the disqualified attorney may continue the representation, "the client will almost always be reluctant to forego the assistance of familiar counsel or to incur the expense and inconvenience of retaining another lawyer." *See Jones v. City of Chicago,* 610 F.Supp. 350, 361 (N.D.Ill.1984) (observing that the client will generally be guided in the decision to retain the firm by the same firm and attorney whose continued representation is at issue). The court does have the authority to decline to honor the client's choice if the court concludes that the client should not agree to the representation under the circumstances of the case. In making that determination, the court may balance the clients' interests in the continuing representation against the nature of the anticipated testimony, and the credibility issues that the testimony may pose.

The record does not allow us to reach a conclusion here as to whether the trial court abused its discretion in disqualifying FGH from representing the Fognanis. The trial court made extensive findings concerning the propriety of further representation by Mr. Fognani, but made no findings with respect to the firm. Accordingly, we remand for the trial court to reconsider this issue consistent with this opinion.

that compliance with the conflict provisions of 3.7(b) does not immunize the lawyer from complying with the conflict provisions of Rule 1.10 as

well if the circumstances are such that compliance is required. *See id.* at n. 4.

## IV. CONCLUSION

We hold that Colo. RPC 3.7 requires that Mr. Fognani be disqualified from appearing as an advocate in this case because he is likely to be called as a witness at trial. In so holding, we limit the attorney's role to pretrial activities, unless the court determines that participation by Mr. Fognani would have the tendency to disclose his dual role to the jury. Accordingly, we conclude that the trial court did not abuse its discretion in disqualifying Mr. Fognani from representing the Fognanis in this case. Concerning the trial court's disqualification of FGH, we conclude that the record does not permit us to determine whether the court abused its discretion. We remand for the trial court to determine whether the requirements of Rule 1.7 has been met, and specifically to determine whether the client consents to such representation and, if so, to determine whether such consent is objectively reasonable. Accordingly, we make the Rule absolute in part, discharge it in part and remand.

Justice BENDER does not participate.