2012 CO 44

**In re the MARRIAGE OF Jeffrey A. WIGGINS, Petitioner**

and

**Zwilda Wiggins, Respondent.**

No. 12SA63.

Supreme Court of Colorado,
En Banc.

June 18, 2012.

Gutterman Griffiths PC, Ann Gushurst, Littleton, Colorado, Attorneys for Petitioner.

Lass Moses Ramp LLC, Terrance R. Kelly, Denver, Colorado, Attorneys for Respondent.

Ronald D. Litvak, Lesleigh Monahan, Robert Kendig, Denver, Colorado, Attorneys for Amicus Curiae Colorado Chapter of the American Academy of Matrimonial Lawyers.

Chief Justice BENDER delivered the Opinion of the Court.

¶ 1 This original proceeding brought under C.A.R. 21 arises from a divorce and parenting case that is in its third year of post-dissolution decree litigation. Mother's petition challenges the district court's summary denial of her motion for a protective order and sanctions concerning the acquisition by Father's attorney of Mother's entire employment file from Mother's former employer by subpoena. We accepted jurisdiction to determine whether Father's attorney violated C.R.C.P. 45 when she made arrangements with Mother's former employer for the production of Mother's employment file without Mother's consent and before Mother had notice of the existence of the subpoena.

¶ 2 We interpret Rule 45 to require that, unless the subpoenaed witness and other parties consent to an alternate arrangement or by other court order, subpoenaed documents are to be produced only at the deposition, hearing, or trial specified in the subpoena and hold that the conduct of Father's attorney in this case violated Rule 45. We further hold that because Rule 45 sets forth the procedure for the fair marshaling of subpoenaed testimony and documents, Father's attorney frustrated the purpose of Rule 45 by depriving Mother of the opportunity to object to the subpoena before the documents were produced. Although the personal and sensitive nature of the documents obtained by Father's attorney magnifies her violation of Rule 45, our holding is not dependent on the documents being privileged, confidential, or otherwise protected. Thus, we need not reach the question of whether an employment file is presumed to be protected from discovery.

¶ 3 For these reasons, we reverse the trial court's order, make the rule absolute, and remand this matter to the trial court. On remand, we direct the trial court to ensure that Father and Father's attorney identify and recover, and then return or destroy all physical and electronic copies of the documents produced by Mother's former employer pursuant to the subpoena issued by Father's attorney, including Mother's entire employment file. We also direct the trial court to determine whether sanctions should be awarded to Mother against Father's attorney for the rule violation.

## I. Facts and Proceedings Below

¶ 4 There is no dispute between the parties as to the facts or sequence of events germane to this appeal. Jeffrey Wiggins ("Father") and Zwilda Wiggins ("Mother") were divorced in May 2009. Since then, the parties have been embroiled in post-dissolution decree litigation. Both parties sought discovery in advance of an October 13, 2011 hearing concerning parenting time and child support.

¶ 5 Three business days before the October 13 hearing, Father's attorney served a subpoena on an individual who worked at the school where Mother was previously employed. When the school's office manager called Father's attorney's law firm to inform Father's attorney that the individual was out of the office for two weeks, Father's attorney served a second subpoena a couple of hours later. This time, the subpoena was served on the school's office manager. The subpoena commanded the office manager to appear at the October 13 hearing and to produce, at the hearing, Mother's entire employment file, as well as any other records of communications with Mother:

> You are hereby ordered to attend and give testimony at the Douglas County District Court ... on Thursday, October 13, 2011, at 1:30 p.m. as a witness for the Petitioner [Father] *and also to produce then and there the documents listed in the attached Exhibit "A"* now in your custody and control.
>
> . . .
>
> Exhibit "A"
>
> . . .
>
> Produce the entire [school] employment file for Ms. Wiggins, as well as any and all records of correspondence with Ms. Wiggins throughout her employment at [the school], including any written letters, notes

from phone conversations, and notes from in-person meetings.

(Emphasis added.)

¶ 6 Approximately ten minutes after the school's *office* manager had been served with the subpoena, a third individual—the school's *business* manager—called Father's attorney and left a voice message informing her that the school's office manager was not authorized to access or verify the school's personnel files. When Father's attorney returned the business manager's call, the business manager further explained that the school's personnel files were kept locked in her office and added that the school would be closed for two days at the beginning of the following week. The business manager then asked how she should deliver Mother's employment file to Father's attorney.

¶ 7 Father's attorney informed the business manager that the documents could be scanned and faxed or emailed directly to her. Father's attorney also indicated to the business manager that by transmitting the documents by fax or email in advance of the hearing, there was a good chance that the business manager would not have to testify or that the business manager could testify by phone to verify the documents, so long as Mother's attorney agreed. The school's business manager immediately scanned Mother's employment file in its entirety and emailed it to Father's attorney. Less than an hour after issuing the corrected subpoena *duces tecum*, Father's attorney was in possession of Mother's entire employment file.

¶ 8 That same evening, Father's attorney forwarded the documents to Mother's attorney by email and requested that Mother waive the need for the business manager's appearance at the hearing. Father's attorney also copied Father on the email, thereby providing Father with an electronic copy of Mother's entire employment file. The email from Father's attorney to Mother's attorney stated in its entirety:

> We have received Ms. Wiggins' [sic] entire employment file. The email providing it and file [sic] are both attached. *We do have a witness subpoenaed to authenticate the documents, explain how the records are kept, and verify that this is the entire file.* However, because she has a job to do, she would appreciate having her appearance waived. We are hoping that you will agree to the authenticity of these documents and their admissibility without her testimony. Please advise whether you will stipulate to the admission of these documents. If not, please advise as to whether you will object to the witness testifying by phone. Thank you.

(Emphasis added.)

¶ 9 Because the return of service had not yet been received by Father's attorney from the process server, Father's attorney had not yet provided Mother with formal notice of the subpoena. Nor had Father's attorney provided Mother with any notice of the subpoena.[1] As such, Mother and Mother's attorney had no knowledge of the subpoena prior to Father's attorney's email.

¶ 10 In response, Mother's attorney protested Father's and Father's attorney's possession of Mother's employment file; claimed that it contained confidential and secure financial information and that it was improperly obtained by Father's attorney; and demanded that Father's attorney recover and return or destroy all physical and electronic copies of the documents, including all copies possessed by Father as a result of Father's attorney copying him on the email. Father's attorney refused, maintaining that the employment file had been acquired "via a valid subpoena *duces tecum*."

¶ 11 The hearing concerning parenting time and child support was continued, and Mother moved for a protective order and sanctions against Father's attorney concerning the subpoenaed documents. The district court denied Mother's motion without explanation, and Mother's petition for our review followed.

## II. Original Jurisdiction and Standard of Review

¶ 12 We first address whether an original proceeding is the proper method to

---

1. It was not until approximately noon on the following Monday—Columbus Day—that Father's attorney electronically transmitted the return of service to Mother's attorney, which provided formal notice of the subpoena to Mother.

review the trial court order denying Mother's motion for a protective order and sanctions. Exercise of our original jurisdiction under C.A.R. 21 is within our sole discretion. *Fognani v. Young*, 115 P.3d 1268, 1271 (Colo. 2005). Even though a trial court's ruling on a discovery matter is interlocutory in character and is generally not reviewable in a C.A.R. 21 original proceeding, a discovery ruling is not exempt from extraordinary relief if it appears that the order "may cause unwarranted damage to a litigant that cannot be cured on appeal." *Cardenas v. Jerath*, 180 P.3d 415, 420 (Colo.2008) (quoting *Direct Sales Tire Co. v. Dist. Ct.*, 686 P.2d 1316, 1318 (Colo.1984)). We have previously exercised our original jurisdiction to review discovery rulings concerning documents that are alleged to be confidential, privileged, or otherwise protected. *In re Dist. Ct.*, 256 P.3d 687, 690 (Colo.2011) (concerning compensation information); *Cardenas*, 180 P.3d at 420 (concerning medical records); *Stone v. State Farm Mut. Auto. Ins. Co.*, 185 P.3d 150, 155 (Colo.2008) (concerning tax returns). In addition, "[w]e generally elect to hear C.A.R. 21 cases that raise issues of first impression and that are of significant public importance," *Stamp v. Vail Corp.*, 172 P.3d 437, 440 (Colo.2007), and we have previously exercised our original jurisdiction to review questions of rule interpretation, *Fognani*, 115 P.3d at 1271 (interpreting Colo. RPC 3.7).

■ ¶ 13 Following these legal standards, we conclude that exercise of our original jurisdiction is appropriate in this case. First, Mother seeks to protect her employment file from discovery, which she alleges contains personal, privileged, and confidential information such as bank account numbers and bank routing information, employment application information, her personal résumé and teacher lesson plans, educational transcripts and certifications, a performance appraisal, and her employment contract. Given the sensitive nature of this information, the trial court's summary denial of Mother's motion for a protective order may result in unwarranted and irreparable damage to Mother because it allows Father to maintain possession of Mother's entire employment file and permits Father's unrestricted use of the information it contains.

¶ 14 Second, this court has never before considered when and where Rule 45 requires the production of subpoenaed documents to occur. A clear directive in this regard is essential to maintain fairness in the judicial process and to avoid abuses of the subpoena power for tactical advantage. The *amicus curiae* American Academy of Matrimonial Lawyers emphasize that this is particularly true in the context of family law cases where the breadth of potential inquiry into matters ranging from mental and physical health to income and assets invites discovery abuse. *See, e.g., In re Marriage of Ensminger*, 209 P.3d 1163, 1166–67 (Colo.App.2008) (upholding an award of attorney fees against an attorney who was found to have acted in bad faith and to have abused the judicial process in issuing a nonparty subpoena).

¶ 15 We review matters under C.A.R. 21 for abuse of discretion. *E.g., Ortega v. Colo. Permanente Group, P.C.*, 265 P.3d 444, 447 (Colo.2011); *Cardenas*, 180 P.3d at 420.

### III. Mootness

■ ¶ 16 Next, we must consider Father's argument that this issue is moot. An issue is moot if "a judgment which, when rendered, cannot have any effect upon an existing controversy." *Reserve Life Ins. Co. v. Frankfather*, 123 Colo. 77, 79, 225 P.2d 1035, 1036 (1950). In addition, where subsequent events cause an issue to become moot, we will decline to entertain the merits of an appeal. *See, e.g., Trinidad Sch. Dist. No. 1 v. Lopez*, 963 P.2d 1095, 1102 (Colo.1998); *Humphrey v. Sw. Dev. Co.*, 734 P.2d 637, 639–40 (Colo.1987).[2]

¶ 17 Father contends that the issue raised in this appeal is moot because Mother's employment file was sought from Mother's former employer in connection with Mother's motion to modify child support, a motion

---

2. There are, however, two exceptions to the mootness doctrine, and we may "review a moot issue if (1) the issue is capable of repetition, yet evades review; or (2) the matter involves a question of great public importance." *In re Marriage of Balanson*, 25 P.3d 28, 38 n. 3 (Colo.2001).

which Mother has since withdrawn.[3] We are not persuaded. We acknowledge that Father's attorney obtained Mother's employment file in connection with Mother's motion to modify child support, but there is no rule or court order that confines Father's use of that discovered information to that particular motion. It is undisputed that the post-dissolution decree litigation between the parties is ongoing and exceptionally contentious. It is also undisputed that Father's attorney and Father are still in possession of Mother's employment file, which Mother alleges contains personal, privileged, and confidential information. If Father is permitted to retain possession of Mother's employment file, then he will be free to use the information as he would use any other discovery information. For example, he may attempt to introduce the information as evidence in another proceeding, or he may seek to use the information as a means to discover other evidence. Therefore, Father's right to retain possession of Mother's employment file is still an existing controversy. The central issue raised by Mother is whether Father's attorney improperly obtained subpoenaed documents from Mother's former employer. It would be antithetical to the rules governing civil discovery to allow a party to retain possession of discovery information that has been obtained improperly. *See, e.g.,* C.R.C.P. 37(c)(1) (prohibiting a party who fails to disclose information from using such information at trial). Therefore, the fact that Mother has withdrawn her motion to modify child support does not render the issue moot.[4]

¶ 18 Alternatively, Father argues that this issue is moot because although a subpoena was served on the school's *office* manager, no subpoena was ever served on the school's *business* manager, who produced Mother's employment file after informing Father's attorney that the school's *office* manager did not have authority to access or verify the school's employment files. Father maintains that because no subpoena was ever served on the business manager, the business manager's production of Mother's employment file was wholly voluntary. Again, we are not persuaded. There is no doubt that the subpoena served on the school's office manager was intended to secure documents possessed by the school and not documents individually possessed by the office manager herself. Nor is there any confusion that when the school's business manager called Father's attorney to explain that the office manager had no access to Mother's employment file and to ask how she should deliver the employment file to Father's attorney, the business manager believed that she was fulfilling the school's obligation to comply with the subpoena.

¶ 19 Had Father's attorney believed that the business manager was providing the documents voluntarily and not under subpoena, there would have been no reason for Father's attorney to explain that the business manager would still have to appear in court the following week pursuant to the subpoena. Furthermore, had Father's attorney believed that the business manager was providing the documents voluntarily, she would not have stated in her emails to Mother's attorney

---

3. Father also contends: (1) that Mother's reference to the employment file in certain sworn discovery responses constitutes a waiver of any claim of confidentiality, which estops Mother from now alleging that the documents are confidential; and (2) that the timing and purpose of Mother's appeal was merely a tactic to prejudice Father at the trial court's hearing on Father's motion to modify parenting time. Father claims that the appellate filing caused his attorney to be "loathe to use" the information contained in the employment file to impeach Mother's testimony at the parenting time hearing, resulting in the trial court's finding that Mother was wholly credible and Father was not.

We reject both of these contentions. First, because our holding that Father's attorney violated Rule 45 does not turn on whether the documents obtained by Father's attorney were confidential in nature, whether judicial estoppel applies based on Mother's prior statements or representations is irrelevant here. Second, whether Father's attorney chose to alter her trial strategy for the parenting time hearing as a result of Mother's appellate filing is also irrelevant to our inquiry. Mother's appeal was properly filed pursuant to C.A.R. 21 and relates solely to the trial court's order denying her motion for a protective order and sanctions.

4. Assuming arguendo that Father's mootness argument had merit, the exceptions to the mootness doctrine would apply in this case to permit our review of this issue for the same reasons set forth in section II, *supra*, concerning the exercise of our original jurisdiction over this case.

that there was "a witness subpoenaed to authenticate the documents, explain how the records are kept, and verify that this is the entire file" or that Mother's employment file had been obtained "via a valid subpoena *duces tecum.*"

¶ 20 Thus, it is clear that the purpose of the subpoena was to obtain Mother's employment file from the school and not from any particular individual working at the school. The conduct of Father's attorney cannot escape review on the technicality that the subpoena was served on the school's office manager but responded to by the school's business manager. We therefore reject Father's alternative mootness argument and proceed with our analysis.

## IV. Analysis

¶ 21 In order to determine whether Father's attorney violated Rule 45, we first examine the language of Rule 45. We then apply the rule to the facts of this case and consider the issue of sanctions.

### A. Rule 45 Examined

¶ 22 We begin with Rule 45. Rule 45 sets forth the formal process by which an attorney may invoke the subpoena power to require the attendance of a witness at a deposition, hearing, or trial, and to acquire documents from that witness:

> Subpoenas may be issued under Rule 45 only to compel attendance of witnesses, with or without documentary evidence, at a deposition, hearing or trial. Every subpoena ... shall command each person to whom it is directed to attend and give testimony at a time and place therein specified.
>
> ...
>
> A subpoena may also command the person to whom it is directed to produce the

books, papers, documents, or tangible things designated therein . . . ."

C.R.C.P. 45(a)-(b).

¶ 23 Whether Father's attorney violated Rule 45 when she accepted delivery of subpoenaed documents in advance of the time and place specified in the subpoena depends on whether the rule governs where and when the production of subpoenaed documents must occur. Mother contends that the rule requires production only at the designated deposition, hearing, or trial. In response, Father argues that no violation of Rule 45 occurred because the rule is silent as to whether a subpoenaed witness may produce subpoenaed documents in advance of the time and place specified in the subpoena.

¶ 24 The standard principles of statutory construction apply to our interpretation of court rules, including the rules of civil procedure. *Leaffer v. Zarlengo,* 44 P.3d 1072, 1078 (Colo.2002). Accordingly, we first aim to interpret a rule's language consistent with its "commonly understood and accepted meeting." *Id.* If the rule is unambiguous, then we apply the rule as written. *See People v. Angel,* 2012 CO 34 ¶ 17, 277 P.3d 231.

¶ 25 We have previously explained that Rule 45 does not permit an attorney[5] to subpoena documents by themselves; rather, a subpoena for the production of documents may be sought only in connection with a subpoena for a witness's attendance at a deposition, hearing, or trial.[6] *Colo. Mills, LLC v. SunOpta Grains & Foods Inc.,* 2012 CO 4, ¶ 20 n. 8, 269 P.3d 731, 735 n. 8; *In re Atty. E.,* 78 P.3d 300, 305 (Colo.2003); *Feigin v. Colo. Nat. Bank, N.A.,* 897 P.2d 814, 818 (Colo.1995).

¶ 26 The authority of an attorney to subpoena documents under Rule 45 comes from the prepositional phrase "with or without documentary evidence," which is couched within the rule's principal power to require a

---

5. A subpoena may be issued without court order by an attorney of record or by the clerk of court in which the action is pending. C.R.C.P. 45(e).

6. Colorado's Rule 45 is different from its federal counterpart, which authorizes the issuance of a subpoena *duces tecum* independently from the issuance of a subpoena to attend and testify: "A command to produce documents, electronically

stored information, or tangible things or to permit the inspection of premises may be included in a subpoena commanding attendance at a deposition, hearing, or trial, *or may be set out in a separate subpoena."* F.R.C.P. 45(a)(1)(C) (emphasis added); *see also* 12 Debra Knapp & Kelly Ryan, *Colo. Civil Proc. Forms & Commentary* § 45.7 (2d ed. 2012).

witness to attend and testify at a deposition, hearing, or trial. C.R.C.P. 45(a). In addition, the rule's use of the adverb "only" constrains the purpose and operation of the subpoena power, restricting its application only "to compel attendance of witnesses" and only "at a deposition, hearing or trial." *Id.* Taken together, these two linguistic devices restrict the time and place for the production of subpoenaed documents to the deposition, hearing, or trial where the witness must attend and testify. *Id.;* CBA Ethics Comm., Rev. Formal Op. 86 (Rev. 1998) ("[C.R.C.P.] 45 only authorizes the production of documents pursuant to a subpoena *duces tecum* 'at a deposition, hearing or trial.' "). Thus, the plain language of Rule 45 unambiguously prohibits an attorney from accepting subpoenaed documents from a subpoenaed witness in advance of the specified deposition, hearing, or trial.

¶ 27 By requiring that subpoenaed documents be produced only at the specified deposition, hearing, or trial, Rule 45 balances the right to obtain information and evidence with the right to shield information from disclosure by ensuring sufficient opportunity for the subpoenaed witness, other parties to the case, or any other person claiming an interest in the subpoenaed documents to object to the subpoena. See C.R.C.P. 45(b)(1) (permitting motions to quash or modify a subpoena "at or before the time specified in the subpoena for compliance therewith"); C.R.C.P. 45(d)(1) (permitting motions for protective order).

 ¶ 28 The opportunity to object to a subpoena is a vital protection of Rule 45

that is safeguarded not only by the rule's requirement that subpoenaed documents be produced only at the specified deposition, hearing, or trial, but also by the rule's requirement that all other parties to the case receive notice of the subpoena promptly after it is served on the subpoenaed witness.[7] *See* C.R.C.P. 45(c) ("Service on other parties shall be made promptly after the service of the subpoena upon the person named therein."). For these reasons, production of subpoenaed documents in advance of the specified event would obstruct the right of a party, the subpoenaed witness, or other interested persons and would frustrate the purpose of the rule to fairly marshal the evidence of a case.[8] *See* Colo. RPC 3.4 cmt. 1 ("The procedure of the adversary system contemplates that the evidence in a case is to be marshaled competitively by the contending parties."). Fair competition for evidence is secured by the rules of civil procedure, as well as by the ethical obligations imposed on lawyers by Colorado's Rules of Professional Conduct. *See* CBA Ethics Comm., Rev. Formal Op. 86 ("Knowingly violating the requirement of [C.R.C.P.] 45(a) that documents responsive to a subpoena be produced only at a deposition, hearing, or trial ... may deprive a party or witness of vital protections, and is unethical."); *see also* Colo. RPC 3.4 (concerning fairness to opposing party and opposing counsel); Colo. RPC 4.3 (concerning dealings with unrepresented parties); Colo. RPC 4.4 (concerning respect for rights of third persons).[9]

---

**7.** This notice to opposing parties is especially important in light of the fact that a subpoenaed witness will often be unrepresented and less sophisticated as to his or her rights to object to the subpoena. *See* CBA Ethics Comm., Rev. Formal Op. 86 ("During any communication with a nonparty witness, a lawyer should keep in mind that the imbalance in knowledge and skill between a lawyer and lay witness may cause even well intentioned acts of the lawyer to have a coercive impact on the witness and induce the witness to disclose privileged or confidential information."). On its face, a subpoena *duces tecum* looks like an order from the court. A lay party might, understandably, fear that any failure to comply with the subpoena will be unlawful per se, which in some cases will not be true. The lay party will

thus be eager to comply fully and quickly with the subpoena's requirements.

**8.** Such conduct would be tantamount to any other surreptitious and unilateral act such as cancelling a deposition subpoena without the agreement of opposing counsel. *See* CBA Ethics Comm., Abstract 98/99–02 (1999).

**9.** We do not consider or address whether Father's attorney violated the Rules of Professional Conduct when she violated Rule 45. *See Mercantile Adjustment Bureau, L.L.C. v. Flood,* 2012 CO 38 ¶ 15, 278 P.3d 348 ("[P]ossible ethical violations arising during litigation are better addressed by the 'comprehensive disciplinary machinery' of the bar.").

¶ 29 Father submits that it is common practice for subpoenaed documents to be produced in advance of the time and place specified in the subpoena. We do not doubt the validity of this assertion nor do we rebuke the practice so long as all of the parties and the subpoenaed witness consent to the alternate arrangement, or if the trial court so orders.[10] Accordingly, if an attorney desires to receive subpoenaed documents from a subpoenaed witness in advance of the time and place specified in the subpoena, or if the subpoenaed witness offers to produce the documents ahead of time, then the attorney must confer with and obtain consent from all other parties to the case as well as the subpoenaed witness.[11] If the other parties or the subpoenaed witness do not consent, then production must wait until the time and place of the event specified in the subpoena. Obtaining consent for the advance production of subpoenaed documents not only satisfies Rule 45's procedural safeguards but also affords pragmatic accommodation to the realities of litigation practice.

## C. Rule 45 Applied

¶ 30 In accordance with Rule 45, the subpoena issued by Father's attorney ordered Mother's former employer "to attend and give testimony" at the then—scheduled October 13 hearing and "also to produce *then and there* the documents listed in the attached Exhibit 'A.' " (Emphasis added.) Almost immediately after receiving the subpoena, the school's business manager called Father's attorney to inform her that the school's office manager, who was named in the subpoena, was not authorized to access or verify the school's personnel files. The business manager further explained that she keeps the school's personnel files locked in her office and that the school would be closed for two days the following week. The business manager then asked Father's attorney how she should deliver Mother's employment file in response to the subpoena. Instead of explaining that the subpoena did not require production of the documents until the hearing date the following week or that the school had the right to withhold any privileged documents or that it might be possible for the business manager to provide the documents in advance of the hearing but that permission from Mother would be required, Father's attorney directed the business manager to scan and fax or email the documents directly to her, which the business manager did immediately. These unilateral arrangements violated Rule 45 because they prevented Mother from having an opportunity to object to the subpoena before her entire employment file was disclosed.

¶ 31 Compounding the issue is the fact that, at the time that Father's attorney made arrangements with the school's business manager for the production of Mother's employment file, notice of the subpoena had not even been served on Mother. Father contends that his attorney did not violate the notice requirements of Rule 45 because the rule requires notice "promptly after" service of the subpoena has been made on the witness and that his attorney did not receive the return of service from the process server until the Monday after service was made, at

---

10. The Ethics Committee of the Colorado Bar Association has instructed that it is ethical to send a cover letter to a subpoenaed nonparty witness indicating that the witness may produce the subpoenaed documents in advance of the time and place specified in the subpoena, "provided there are not claims of privilege with respect to the requested documents." CBA Ethics Comm., Abstract 98/99–02. We interpret this instruction as consistent with the holding of this opinion that advance production of subpoenaed documents is prohibited by Rule 45 unless all parties and the subpoenaed witness consent.

11. For the reasons stated in note 7, *supra*, attorneys must use extra caution in their communications when seeking consent from a subpoenaed witness for the advance production of subpoe- naed documents, including in a subpoena cover letter. The Ethics Committee of the Colorado Bar Association advises lawyers that their letter should: (1) identify the lawyer clearly; (2) state the reason for the communication; (3) inform the subpoenaed nonparty witness that the subpoena does not require the witness to disclose information to the lawyer other than at the specified deposition, hearing, or trial; (4) inform the witness that he or she has the right to withhold any privileged documents; and (5) tell the witness to consult his or her attorney with questions regarding what constitutes privileged documents or information. CBA Ethics Comm., Abstract 98/99–02; *see also* CBA Ethics Comm., Rev. Formal Op. 86.

which time Father's attorney electronically entered the return of service thereby providing formal notice of the subpoena to Mother. That may be so, but the fact that Father's attorney made arrangements for the advance production of the subpoenaed documents with clear knowledge that Mother had not yet received notice of the subpoena further highlights the impropriety of her actions. By directing the school's business manager to produce the subpoenaed documents at a time when Mother had no knowledge of the subpoena, Father's attorney did not merely obstruct Mother's right to object to the subpoena, she effectively extinguished that right altogether. As such, we hold that the manner by which Father's attorney obtained Mother's employment file and any other documents from the school in response to the subpoena violated Rule 45.

¶ 32 Mother makes the additional argument that Father's attorney obtained her employment file in violation of Rule 45 because employment files are presumed to be protected from discovery. Because our holding that Father's attorney violated Rule 45 does not depend on whether the documents obtained are privileged, confidential, or otherwise protected, we decline to address this additional argument.

### D. Sanctions

¶ 33 Last, we address Mother's argument that the violation of Rule 45 by Father's attorney rises to the level of an abuse of discovery and warrants sanctions against Father's attorney pursuant to section 13–17–102(4), C.R.S. (2011),[12] because Mother's employment file contained confidential, privileged, or otherwise protected information.

Pursuant to section 13–17–102(4), a court "shall assess" attorney fees if it finds that an attorney unnecessarily expanded the proceeding by abusing the rules of discovery.[13] To determine whether to assess attorney fees, the court is required to set forth the reasons for its award and to consider the factors, among others, enumerated in section 13–17–103, C.R.S. (2011). Although we hold that Father's attorney violated Rule 45 when she arranged for the advance production of Mother's employment file from Mother's former employer, we leave it to the trial court to determine whether sanctions are appropriate in this case.

### V. Conclusion

¶ 34 For the foregoing reasons, we make the rule absolute, reverse the trial court's order, remand the case to the trial court, and direct the trial court to ensure that Father and Father's attorney identify and recover, and then return or destroy all physical and electronic documents produced by Mother's former employer pursuant to the subpoena issued by Father's attorney, including Mother's entire employment file. On remand, we also direct the trial court to determine, in accordance with sections 13–17–102(4) and 13–17–103, whether attorney fees should be levied against Father's attorney for her violation of Rule 45.

---

12. In pertinent part, section 13–17–102(4) provides: "The court shall assess attorney fees if, upon motion of any party or the court itself, . . . it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including but not limited to, abuses of discovery procedures available under the Colorado rules of civil procedure. . . ."

13. We have previously commented that "[a] subpoena *duces tecum* issued pursuant to C.R.C.P.

45(b) is designed to produce evidence at trial but is not intended as a discovery device." *Watson v. Reg'l Transp. Dist.*, 762 P.2d 133, 141 n. 12 (Colo.1988). However, when a Rule 45 subpoena is used as a discovery device, the rules of discovery apply. *See Keplinger v. Va. Elec. & Power Co.*, 208 W.Va. 11, 537 S.E.2d 632, 641–42 (2000).