This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **NO. 33,489**

**JOSE CONTRERAS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ZAMORA, Judge.**

{1}     Defendant, Jose Contreras appeals from his convictions for aggravated driving under the influence (DWI), contrary to NMSA 1978, Section 66-8-102(D)(3) (2010),

careless driving, contrary to NMSA 1978, Section 66-8-114(B) (1978), and possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(D) (2011). Defendant argues that: (1) the State presented insufficient evidence to sustain his convictions, (2) the jury was not properly instructed on the essential elements for the aggravated DWI charge, (3) his convictions for aggravated DWI and careless driving violate the prohibition against double jeopardy, and (4) he received ineffective assistance of counsel.

**BACKGROUND**

{2}     On February 26, 2011, Doña Ana County Sheriff's Deputies Martha Aguilera and Adrian Chavez were dispatched to an automobile accident. Upon arriving at the scene of the accident, Deputy Aguilera observed Defendant outside of the vehicle. Defendant told Deputy Aguilera that he had been driving the vehicle and that he was drunk. During an investigatory detention, Defendant consented to a patdown for weapons and Defendant informed Deputy Aguilera that he had cocaine in his right front coin pocket. With Defendant's permission, Deputy Aguilera retrieved a folded dollar bill from Defendant's pocket. Inside the dollar bill was a small, clear plastic baggie containing a white powdery substance later identified as cocaine.

{3}     Deputy Chavez arrived at the scene of the accident after Deputy Aguilera. He interviewed Defendant about the accident. Defendant stated that he was driving to his

mother's house when he lost control of the vehicle. Deputy Chavez asked Defendant if anything—another vehicle, a person, or an animal—was on the road causing him to crash. Defendant denied that anyone or anything else was involved in the accident.

**{4}** A jury convicted Defendant of aggravated DWI, careless driving, and possession of a controlled substance. This appeal followed.

**DISCUSSION**

**Sufficiency of the Evidence**

**{5}** Defendant claims that the State presented insufficient evidence to sustain his convictions. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citations omitted). "In that light, the [appellate c]ourt[s] determine[] whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

**Aggravated DWI**

**{6}** In this case, the jury was instructed that in order to convict Defendant of aggravated DWI for refusing to submit to a chemical test, the State had to show that on February 26, 2011, "[D]efendant operated a motor vehicle[, D]efendant was under

3

the influence of intoxicating liquor or drugs to such a degree [D]efendant was incapable of safely driving[, and D]efendant refused to submit to chemical testing[.]" Deputy Aguilera testified that when she arrived on the scene of the accident, Defendant told her that he was drunk and that he had been driving the vehicle when it crashed. Deputy Aguilera observed that Defendant had watery eyes and slurred speech. According to Deputy Aguilera, Defendant was incapable of performing field sobriety tests because "he could barely stand on his own two feet." Defendant twice refused to take a breath test, saying "I'm too drunk, I had 20." This evidence is sufficient to support Defendant's conviction for aggravated DWI.

**Careless Driving**

{7}     In order to convict Defendant of careless driving, the State had to show that on February 26, 2011, "[D]efendant operated the motor vehicle in a careless, inattentive[,] or imprudent manner without due regard for the width, grade curves, corner, traffic, weather, road conditions and all other attendant circumstances." According to Deputy Chavez's testimony, Defendant admitted that he was driving the night of the accident. When he was asked for an explanation of how he lost control of the vehicle, Defendant responded by saying "he was drunk." When asked, Defendant denied there being anything else on the road that night that contributed to the accident. The State also produced photographs of the vehicle after the accident, which showed

4

that Defendant's vehicle initially struck a pole, ripping the front tire away from the vehicle and continued into a fence. We conclude that this evidence is sufficient to support Defendant's conviction for careless driving.

**Possession of a Controlled Substance (Cocaine)**

{8}    Defendant challenges his conviction for possesion of a controlled substance pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982. Defendant claims that he should not have been convicted because the cocaine did not belong to him; however, Defendant acknowledges that this assertion was not stated on the record.

{9}    With regard to possession of cocaine, the jury was instructed that in order to find Defendant guilty of possession of cocaine, the State was required to prove beyond a reasonable doubt that on February 26, 2011, Defendant "had cocaine in his possession;" and "knew it was cocaine or believed it to be cocaine." The jury was also given the following definition of "possession":

> A person is in possession of cocaine when he knows it is on his person or in his presence and he exercises control over it.

> A person's presence in the vicinity of the [substance] or his knowledge of the existence or the location of the [substance] is not, by itself, possession.

UJI 14-3130 NMRA.

**{10}** Deputy Aguilera testified that Defendant told her he had cocaine concealed in a dollar bill in his right front coin pocket and gave her permission to remove it. The substance discovered in the dollar bill was a white powdery substance, that was later tested and identified as cocaine. Based on these facts, we conclude that there was sufficient evidence to support Defendant's conviction for possession of cocaine.

**{11}** To the extent that Defendant relies on his own testimony to support a different result, "[t]he question is not whether substantial evidence would have supported an opposite result but whether such evidence supports the result reached." *State v. James*, 1989-NMCA-089, ¶ 11, 109 N.M. 278, 784 P.2d 1021.

**The Aggravated DWI Jury Instruction**

**{12}** Defendant argues that he did not receive a fair trial because the jury was not provided a proper jury instruction for DWI. Defendant acknowledges that he did not object to the DWI instruction as it was given and asks us to review the DWI instruction for fundamental error. *See State v. Cunningham*, 2000-NMSC-009, ¶ 11, 128 N.M. 711, 998 P.2d 176 (holding that where a defendant did not object to the jury instructions as given, the appellate court reviews only for fundamental error). Fundamental error exists "if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Caldwell*, 2008-NMCA-

049, ¶ 22, 143 N.M. 792, 182 P.3d 775 (internal quotation marks and citation omitted); *see State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633 (explaining that fundamental error includes both "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused").

{13}    Under fundamental error review, a conviction cannot be upheld if an error implicates "a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *Barber*, 2004-NMSC-019, ¶ 18 (internal quotation marks and citation omitted). Thus, we must determine whether the departure from the language of the uniform jury instruction caused such a "fundamental unfairness" in Defendant's trial. *See id.* When we analyze jury instructions for fundamental error, "we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citation omitted). In order for such an instruction to mislead, it must "omit essential elements or be so confusing . . . that a court cannot be certain that the jury found the essential elements." *Caldwell*, 2008-NMCA-049, ¶ 24 (internal quotation marks and citations omitted).

{14} The uniform jury instruction that states the essential elements of the crime of aggravated DWI while under the influence of alcohol or drugs and refusing to submit to chemical testing as defined by Section 66-8-102(D) provides:

> For you to find the defendant guilty of aggravated driving while under the influence of [intoxicating liquor] [or drugs] [as charged in Count ____], the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant operated a motor vehicle;
>
> 2. At that time the defendant was under the influence of [intoxicating liquor; that is, as a result of drinking liquor the defendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public;]
>
> [or]
>
> [drugs to such a degree that the defendant was incapable of safely driving a vehicle;]
>
> 3. The defendant refused to submit to chemical testing; and
>
> 4. This happened in New Mexico, on or about the ____ day of _____, ____.

UJI 14-4508 NMRA. The district court gave the following jury instruction submitted by the State:

> For you to find [D]efendant guilty of aggravated driving while under the influence of intoxicating liquor or drugs as charged in Count 2, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

8

1.      [D]efendant operated a motor vehicle;

2.      At that time [D]efendant was under the influence of intoxicating liquor or drugs *to such a degree that [D]efendant was incapable of safely driving a vehicle*;

3.      [D]efendant refused to submit to chemical testing;

4.      This happened in New Mexico, on or about the 26th day of February, 2011.

(Emphasis added.) Comparing the instruction given in this case with the uniform jury instruction, it appears that the instruction was completed using the impairment language set forth for driving under the influence of drugs instead of the impairment language set forth for intoxicating liquor. *See* UJI 14-4508.

{15}    Generally, the uniform jury instructions are to be used without substantive modification. *State v. Ellis*, 2007-NMCA-037, ¶ 10, 141 N.M. 370, 155 P.3d 775 ("District courts must give uniform jury instructions as written."), *rev'd on other grounds by* 2008-NMSC-032, 144 N.M. 253, 186 P.3d 245. However, departure from the language of a uniform jury instruction, does not necessarily rise to the level of fundamental error. *See Jackson v. State*, 1983-NMSC-098, ¶ 5, 100 N.M. 487, 672 P.2d 660 ("[T]here may be fundamental error if the instruction given differs materially from the required instruction."). Rather, "[a] jury instruction is proper, and nothing more is required, if it fairly and accurately presents the law." *State v. Laney*, 2003-NMCA-144, ¶ 38, 134 N.M. 648, 81 P.3d 591. "For fundamental error to exist, the

instruction given must differ materially from the uniform jury instruction, omit essential elements, or be so confusing and incomprehensible that a court cannot be certain that the jury found the essential elements under the facts of the case." *Caldwell*, 2008-NMCA-049, ¶ 24 (internal quotation marks and citations omitted).

{16}     In the present case, the given instruction fairly represents the elements of aggravated DWI by refusing a chemical test; that on February 26, 2011, Defendant was driving in the State of New Mexico, under the influence of intoxicating liquor or drugs, and refused to submit to chemical testing. *See* Section 66-8-102(D)(3); UJI 14-4508.

{17}     We fail to see any material difference, missing elements, or language lending itself to juror confusion that would rise to the level of fundamental error. *See State v. Reed*, 2005-NMSC-031, ¶ 52, 138 N.M. 365, 120 P.3d 447 ("The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice."); *Barber*, 2004-NMSC-019, ¶¶ 8, 14 ("Each case will of necessity, under such a rule, stand on its own merits. . . . The doctrine of fundamental error is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand."(internal quotation marks and citations omitted)).

**Double Jeopardy**

{18}    Defendant argues that his convictions for aggravated DWI and careless driving violate the prohibition against double jeopardy because the same evidence formed the basis on both convictions. "A double jeopardy challenge is a constitutional question of law which we review de novo." *State v. Swick,* 2012-NMSC-018, ¶ 10, 279 P.3d 747. The Fifth Amendment of the United States Constitution, made applicable to New Mexico by the Fourteenth Amendment, "prohibits double jeopardy and . . . functions in part to protect a criminal defendant against multiple punishments for the same offense." *Id.* (internal quotation marks and citations omitted). Double jeopardy cases involving multiple-punishments are classified as either double-description cases, "where the same conduct results in multiple convictions under different statutes," or unit-of-prosecution cases, "where a defendant challenges multiple convictions under the same statute." *Id.* The present case is a double-description case because Defendant challenges two convictions under different statutes for what he claims is the same conduct.

{19}    Double-description cases involve a two-part analysis. *See Swafford v. State*, 1991-NMSC-043, ¶ 12, 112 N.M. 3, 810 P.2d 1223. "First we consider whether the conduct underlying the [offenses] was unitary[.]" *Swick*, 2012-NMSC-018, ¶ 11; *State v. Melendrez*, 2014-NMCA-062, ¶ 7, 326 P.3d 1126. "[R]eviewing whether conduct

11

is unitary in the double jeopardy context, we indulge in all presumptions in favor of the verdict." *State v. Herrera*, 2015-NMCA-116, ¶ 12, 362 P.3d 167 (internal quotation marks and citation omitted). "If the conduct is not unitary, . . . there is no double jeopardy violation." *State v. Contreras*, 2007-NMCA-045, ¶ 20, 141 N.M. 434, 156 P.3d 725 (internal quotation marks and citation omitted). If the conduct is unitary, we must determine "whether the legislature intended to create separately punishable offenses." *Swafford*, 1991-NMSC-043, ¶ 25.

{20}     Turning to the first prong of our analysis, whether the conduct was unitary, we review the elements of the charged offenses. *See State v. Vance*, 2009-NMCA-024, ¶ 13, 145 N.M. 706, 204 P.3d 31. Then we consider whether the facts presented at trial are sufficient to support the elements of both crimes. *See id.* "The proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Id.* (internal quotation marks and citation omitted); *see State v. Olsson*, 2014-NMSC-012, ¶ 37, 324 P.3d 1230 ("In a double description case the primary inquiry is whether the facts presented at trial establish that the jury *reasonably* could have inferred independent factual bases for the charged offenses." (internal quotation marks and citation omitted)).

{21}	At trial, the State produced evidence of aggravated DWI including Deputy Aguilera's testimony that Defendant had watery eyes, slurred speech, was barely able to stand up, admitted to drinking and driving, was unable to perform field sobriety tests, and refused to take a breath test, because he was "too drunk." The State produced evidence of careless driving including photographs of the accident, which depicted Defendant's damaged vehicle, along with Deputy Chavez's testimony that Defendant admitted that he was driving and lost control of the vehicle, as well as Defendant's denial that there were any other factors contributing to the accident. Defendant's argument concentrates on his inability to drive safely as the unitary conduct. The crime of careless driving and that of driving an automobile under the influence of intoxicating liquor or drugs are distinct offenses and are established by different evidence. *Cf. State v. Sisneros*, 1938-NMSC-049, ¶ 19, 42 N.M. 500, 82 P.2d 274 (noting that a case involving the crimes of reckless driving and driving an automobile while under the influence of intoxicating liquor, "[a] conviction of one would not be a bar to a prosecution for committing the other offense. While the evidence of intoxication might bear upon the question of whether the defendant was guilty of reckless driving, it does not necessarily prove it; but is a circumstance to be considered by the jury in deciding the issue.").

**{22}** Based on the evidence, the jury reasonably could have inferred independent factual bases for the aggravated DWI charge and the careless driving charge. As a result, we conclude that Defendant's conduct was not unitary. *See Vance*, 2009-NMCA-024, ¶ 13. Therefore, under the first *Swafford* inquiry, double jeopardy principles were not violated. *See State v. Saiz*, 2008-NMSC-048, ¶ 35, 144 N.M. 663, 191 P.3d 521, *abrogated on other grounds by State v. Bellanger*, 2009-NMSC-025, ¶ 36 n.1, 146 N.M. 351, 210 P.3d 783.

**Ineffective Assistance of Counsel**

**{23}** Defendant claims that he received ineffective assistance of counsel because trial counsel failed to: (1) investigate potential defenses, (2) secure witnesses, (3) preserve issues, and (4) strike a juror who knew Defendant for possible bias. "We review claims of ineffective assistance of counsel de novo." *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44.

**{24}** "The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees . . . the right to the effective assistance of counsel." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted). "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. "A

14

prima facie case of ineffective assistance is made by showing that defense counsel's performance fell below the standard of a reasonably competent attorney and, due to the deficient performance, the defense was prejudiced." *Patterson*, 2001-NMSC-013, ¶ 17 (internal quotation marks and citation omitted).

{25}    In arguing that he received ineffective assistance of counsel, Defendant allegedly relies on several facts, but does not cite to the record to support his assertions. Thus, Defendant has not met his burden to show ineffective assistance. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."); *see also Santa Fe Expl. Co. v. Oil Conservation Comm'n*, 1992-NMSC-044, ¶ 11, 114 N.M. 103, 835 P.2d 819 (holding that where a party fails to cite any portion of the record to support its factual allegations, the appellate courts need not consider its argument on appeal). However, "[i]f facts beyond those in the record on appeal could establish a legitimate claim of ineffective assistance of counsel, [the d]efendant may assert it in a habeas corpus proceeding where an adequate factual record can be developed for a court to make a reasoned determination of the issues." *State v. Crocco*, 2014-NMSC-016, ¶ 24, 327 P.3d 1068.[1]

---

[1]Prior to filing the docketing statement in this Court, Defendant filed a petition for writ of habeas corpus in the district court, challenging his alleged illegal sentence and confinement. Defendant asserted that he had received ineffective assistance of counsel because trial counsel failed to: conduct a proper investigation, investigate

# CONCLUSION

{26}    For the foregoing reasons, we affirm.

{27}    **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Chief  Judge**

_____
**JAMES J. WECHSLER, Judge**

---

potential defenses, secure witnesses, and preserve issues. The district court entered an order on Defendant's petition for writ of habeas corpus and found that Defendant was entitled to partial habeas relief based on trial counsel's failure to file a timely docketing statement. Defendant's remaining claims were dismissed without prejudice, and the order provided that Defendant may "file a successive petition raising these issues (if not addressed in the direct appeal) and any other remaining claims after Mandate in his direct appeal."