The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 23, 2025

**2025COA8**

**No. 24CA0453, *Good Life v. WLCO* — Attorneys and Clients — Rules of Professional Conduct — Lawyer as Witness — Substantial Hardship Exception**

This is the first published opinion in Colorado to consider whether the general rule of Colo. RPC 3.7(a) that an attorney must be disqualified from representing a client when the attorney is a necessary witness on a contested issue only applies to cases set for a jury trial. In addition, it examines whether a lawyer who represents a limited liability company in litigation in which the lawyer is a necessary witness can avoid disqualification under the "substantial hardship" exception to Colo. RPC 3.7(a), when the lawyer offers the client favorable payment terms, which the client cannot obtain from another lawyer, because of the lawyer's personal ties to the client. A division of the court of appeals concludes that Colo. RPC 3.7(a) is not limited to cases that will be tried to a jury

and that the "substantial hardship" exception does not preclude

disqualification of the attorney-witness in this case.

COLORADO COURT OF APPEALS **2025COA8**

Court of Appeals No. 24CA0453
Boulder County District Court No. 22CV121
Honorable Dea M. Lindsey, Judge

Good Life Colorado, LLC,

Plaintiff-Appellant,

v.

WLCO, LLC,

Defendant-Appellee.

ORDERS AFFIRMED

Division I
Opinion by JUDGE LIPINSKY
J. Jones and Sullivan, JJ., concur

Announced January 23, 2025

Muhaisen & Muhaisen, LLC, Wadi Muhaisen, Scott C. Hammersley, Denver, Colorado, for Plaintiff-Appellant

Gard Law Firm, L.L.C., Jeffrey S. Gard, Austin Q. Hiatt, Boulder, Colorado, for Defendant-Appellee

¶ 1    "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness" if the lawyer's testimony relates to a contested issue and does not involve the nature and value of legal services rendered in the case, so long as the lawyer's disqualification would not "work substantial hardship on the client." Colo. RPC 3.7(a)(3). The reasons underlying the rule prohibiting a lawyer from maintaining dual roles as advocate and witness in the same matter before the same tribunal include the concerns that "[a] lawyer who intermingles the functions of advocate and witness diminishes his effectiveness in both roles" and that "[t]he client's case is subject to the criticism that it is being presented through the testimony of an obviously interested witness who on that account is subject to impeachment." *Williams v. Dist. Ct.*, 700 P.2d 549, 553 (Colo. 1985). Moreover, "combining the roles of advocate and witness can prejudice the opposing party as well as involve a conflict of interest between the lawyer and client." *Fognani v. Young*, 115 P.3d 1268, 1272 (Colo. 2005).

¶ 2    Colo. RPC 3.7(a), like other states' versions of the rule, is based on Rule 3.7(a) of the American Bar Association's Model Rules of Professional Conduct. *See* Model Rules of Pro. Conduct r. 3.7(a)

1

(Am. Bar Ass'n 1983). Courts in other jurisdictions that adopted the model rule have noted that it "mitigates the potential negative perception by the public that the attorney colored his or her testimony to further the client's case and relieves the opposing counsel of the difficult task of cross-examining his lawyer-adversary." *Smaland Beach Ass'n v. Genova*, 959 N.E.2d 955, 962 (Mass. 2012). Another noted that an attorney-witness "may be perceived by the trier of distorting the truth for the sake of his client." *Jones v. City of Chicago*, 610 F. Supp. 350, 357 (N.D. Ill. 1984).

¶ 3 At the pretrial stage of the case, the district court disqualified attorney Patrick Og O'Malley from further representation of his client — plaintiff, Good Life Colorado, LLC — because O'Malley's testimony was "relevant, material[,] and unobtainable elsewhere" and was "critical to establishing the outcome of the case."

¶ 4 Good Life appeals the court's order (the disqualification order) disqualifying O'Malley from further representation of Good Life in this case. Good Life contends that Colo. RPC 3.7(a) does not apply to cases, such as this, that are set for a bench trial rather than a jury trial. In addition, Good Life contends that O'Malley was not

subject to disqualification because the court did not find that his continued representation of Good Life would cause "prejudice to any stakeholder," courts should take a cynical view of an adverse party's motion for disqualification when that adverse party is also the party seeking the attorney's testimony, the disqualification order rested on obsolete authority, the court lacked authority to disqualify O'Malley from all further representation of Good Life, and O'Malley's disqualification resulted in "substantial hardship" to Good Life.

¶ 5　　Good Life also appeals the court's denial of two motions it filed after the court dismissed Good Life's claims with prejudice and the court's order granting the motion of defendant, WLCO, LLC, to add Chooze Corp. as a third party. Both Good Life and WLCO seek awards of attorney fees.

¶ 6　　We affirm and decline to award attorney fees to either party to this appeal.

## I.　Background

¶ 7　　Good Life sued WLCO in 2022 for violation of the Colorado Organized Crime Control Act, §§ 18-17-101 to -109, C.R.S. 2024; civil theft under section 18-4-405, C.R.S. 2024; cybercrime; and

civil conspiracy. Good Life alleged that it had an exclusive contract to manufacture, possess, distribute, and sell Chooze-branded marijuana products in Colorado. Good Life further alleged that, despite its exclusive arrangement with Chooze, Chooze entered into a similar contract with WLCO, Chooze improperly transferred a large inventory of finished marijuana products and raw materials to WLCO rather than to Good Life, and Chooze and WLCO engaged in other wrongful acts to Good Life's detriment.

¶ 8 O'Malley signed Good Life's complaint as its counsel and represented it as the litigation progressed. Not only did O'Malley act as Good Life's attorney, but he was also Good Life's former part (50%) owner, president, and registered agent. Before filing this case, O'Malley transferred his interest in Good Life to his wife (who already owned the other 50%), and she assumed the role of Good Life's president.

¶ 9 WLCO did not timely respond to Good Life's complaint, and the court entered a default judgment against WLCO. Two months later, WLCO filed a motion to set aside the default judgment, which the court granted.

¶ 10    On July 10, 2023, WLCO filed a motion (the disqualification motion) to disqualify O'Malley, whom it characterized as "the primary witness to testify about [Good Life's] business dealings and [his] signature [on] relevant contracts." WLCO asserted that, under Colo. RPC 3.7(a), the court was required to disqualify O'Malley from representing Good Life at trial, representing Good Life at depositions, and acting as its lead counsel or "responsible attorney" for purposes of C.R.C.P. 16.

¶ 11    Following an evidentiary hearing (the disqualification hearing), on September 19, 2023, the court disqualified O'Malley from further representation of Good Life in the case. It found that, because "[t]he weight of [O'Malley's] testimony is critical to establishing the outcome of the case," he "is a necessary witness under the first prong of the [Colo. RPC] 3.7(a) analysis and . . . his testimony is relevant, material[,] and unobtainable elsewhere." The court further found that "no other witness or documentary evidence will independently establish the relevant issues" and that O'Malley "is the most knowledgeable witness about the contested issues with regard to [Good Life]." Moreover, the court observed that "it should

have been obvious to [O'Malley] that he would be a necessary witness in this matter when he filed the Complaint."

¶ 12    The court ordered O'Malley to withdraw as Good Life's counsel within fourteen days and ordered Good Life to hire new counsel "who shall enter [an appearance] within 30 days."

¶ 13    But O'Malley ignored the disqualification order and persisted in representing Good Life in the case.  On October 3, 2023, he filed a motion for leave to amend Good Life's complaint on its behalf.  In response, the court noted that it "is not in receipt of [O'Malley's] motion to withdraw, which the Court finds is failing to comply with the Court's Order."  The court then ordered O'Malley to file a motion to withdraw by October 27, 2023, "or the Court will take other appropriate action."

¶ 14    When O'Malley did not move to withdraw by this new deadline, WLCO asked the court to find O'Malley "in indirect contempt of court."  Four days later, O'Malley filed a notice of withdrawal as Good Life's counsel.  But despite the court's order that Good Life hire new counsel "who shall enter [an appearance]" no later than October 19, 2023, Good Life did not engage new counsel until this appeal had been fully briefed.

6

¶ 15    The court found O'Malley in contempt for his failure to comply with the court's orders that he withdraw as Good Life's counsel and awarded WLCO its reasonable costs and attorney fees incurred in connection with the contempt proceeding.

¶ 16    On January 8, 2024, WLCO filed a motion to dismiss Good Life's claims for failure to prosecute (the dismissal motion), in which it noted that Good Life had not hired new counsel despite the court's October 19, 2023, deadline to do so, and that, as a limited liability company, Good Life could not appear pro se in the case under section 13-1-127(2), C.R.S. 2024.  On January 31, 2024, the court entered an order (the dismissal order), in which it dismissed Good Life's claims with prejudice.

¶ 17    Undaunted, on February 14, 2024, O'Malley filed on Good Life's behalf a "Motion Requiring Immediate Attention: Motion to Enter Appearance to Represent Plaintiff in Non-Trial Matters."  In it, Good Life asked the court to allow O'Malley to represent Good Life in pre- and post-trial matters and appeals in the case.  Good Life also argued that it had not received timely notice of the dismissal motion, the entry of the dismissal order had denied it due process,

and it "need[ed] its chosen counsel to navigate these non-trial and post-trial matters."

¶ 18 The court entered an order stating that it was taking no action on the motion to enter appearance. It noted that the court had previously dismissed the action; Good Life had been properly served with the dismissal motion; and although the court allowed Good Life to file a response to the dismissal motion "within the appropriate timeframe," no response had been filed.

¶ 19 O'Malley persisted in filing motions on Good Life's behalf. On March 8, 2024, he filed a "Motion to Vacate: 'Order re: Motion to Dismiss with Prejudice re: Failure to Prosecute'" (the motion to vacate the dismissal order). In it, Good Life argued that the court should set aside the dismissal order because WLCO had failed to provide Good Life with "due notice" of the dismissal motion, WLCO was equitably estopped from obtaining the dismissal order, and WLCO had failed to assert sufficient facts and law in support of the dismissal motion.

¶ 20 Eleven days later, O'Malley filed on Good Life's behalf a "Motion to Vacate: 'Order re: Motion to Set Aside Default Judgment'" (the motion to vacate the default judgment order). Good

Life argued that the court should reinstate the default judgment because, in its motion to set aside the default judgment, WLCO had falsely represented that it was pro se at the time Good Life obtained the default judgment.

¶ 21    On March 20, 2024, the court addressed Good Life's motions to vacate in separate one-paragraph orders (jointly, the March 20 orders).  In its order denying the motion to vacate the dismissal order, the court noted that O'Malley "continues to file motions in a closed matter in which he has not been granted permission to represent [Good Life]," said that O'Malley could not submit any additional filings on Good Life's behalf without the court's permission, and awarded WLCO its attorney fees and costs incurred in responding to the motion to vacate the dismissal order.

¶ 22    The court said it was taking no action on the motion to vacate the default judgment order and awarded WLCO its attorney fees and costs incurred in responding to that motion.  The court echoed the language in its order denying the motion to vacate the dismissal order, saying, "O'Malley is precluded from filing any pleadings in this matter without first obtaining permission from the Court."

¶ 23    O'Malley filed a notice of appeal on Good Life's behalf on March 20, 2024, only minutes before the court entered the March 20 orders.

## II. Analysis

### A. The Court Did Not Abuse Its Discretion by Disqualifying O'Malley

#### 1. Standard of Review

¶ 24    "[T]he disqualification of counsel is a matter largely within the trial court's discretion." *Fognani*, 115 P.3d at 1271-72. "A trial court abuses its discretion if its decision is manifestly unreasonable, arbitrary, or unfair, or it misapplies the law." *HMLL LLC v. MJM Holdings Ltd.*, 2024 COA 85, ¶ 17, 558 P.3d 1006, 1011.

#### 2. Good Life's Appeal of the Disqualification Order Was Timely

¶ 25    We initially turn to WLCO's argument that Good Life's appeal of the disqualification order was untimely. WLCO argues that the disqualification order was a final order; the deadline for Good Life's appeal of the disqualification order was November 7, 2023; and, therefore, Good Life missed the deadline for appealing the disqualification order.

¶ 26    This court generally only has jurisdiction over appeals from final judgments. *Ditirro v. Sando*, 2022 COA 94, ¶ 24, 520 P.3d 1203, 1208; *see* § 13-4-102(1), C.R.S. 2024. "In deciding the finality of an order, we look to the legal effect of the order rather than to its form." *State ex rel. Suthers v. CB Servs. Corp.*, 252 P.3d 7, 10 (Colo. App. 2010). "[F]or purposes of appeal, an order is final and appealable when it 'finally disposes of the particular action and prevents further proceedings as effectually as would any formal judgment.'" *Id.* (quoting *Levine v. Empire Sav. & Loan Ass'n*, 557 P.2d 386, 387 (Colo. 1976)).

¶ 27    The disqualification order was not final and appealable because it did not finally dispose of the case and prevent further proceedings. *See id.*; *see also Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 440 (1985) ("[O]rders disqualifying counsel in civil cases . . . are not collateral orders subject to appeal as 'final judgments.'"); *In re Devlieg, Inc.*, 56 F.3d 32, 33 (7th Cir. 1995) ("In an ordinary civil case, an order either disqualifying or refusing to disqualify a law firm is not appealable when entered, because it is not deemed 'final' . . . ."). The time to appeal the disqualification order began to run when the court entered the dismissal order,

11

which, as we explain in Part II.B.1 below, was the final judgment in this case. *See Ditirro*, ¶ 28, 520 P.3d at 1208.

¶ 28 WLCO additionally argues that Good Life's appeal of the disqualification order failed because Good Life did not refer to the disqualification order in its notice of appeal. But "[t]he issues which are listed in the notice of appeal are advisory only and are, thus, not determinative of those decided by this court." *Resol. Tr. Corp. v. Parker*, 824 P.2d 102, 104 (Colo. App. 1991); *see* C.A.R. 3(d)(3) (providing that a notice of appeal in a civil case must contain "an advisory listing of the issues to be raised on appeal"). Because the listing of issues in the notice of appeal is advisory, it "does not restrict the appellant from arguing additional issues in the opening brief, assuming such issues were raised in the district court." *In re Marriage of Williams*, 2017 COA 120M, ¶ 24, 410 P.3d 1271, 1276 (citations omitted).

> The purpose of the notice of appeal is simply to put the other party on notice that an appeal will be taken and to identify the action of the trial court from which the appeal is to be taken. . . . Substantial compliance with C.A.R. 3[d] is all that is required.

*Widener v. Dist. Ct.*, 615 P.2d 33, 34 (Colo. 1980).

¶ 29    For these reasons, Good Life's notice of appeal was sufficient to allow Good Life to proceed with its appeal of the disqualification order.

### 3.    Preservation

¶ 30    On appeal, Good Life argues that the court abused its discretion by entering the disqualification order because (1) Colo. RPC 3.7 only prohibits attorney-witnesses from representing their clients at jury trials; (2) the court did not find that disqualification was necessary to avoid prejudice to "any stakeholder"; (3) the court should have viewed the disqualification motion with skepticism because WLCO — not Good Life — sought O'Malley's testimony; (4) the disqualification order rested on "obsolete authority" — *People v. Garnett*, 725 P.2d 1149 (Colo. 1986); (5) disqualifying O'Malley from "all representation" of Good Life was an "unavailable remedy" because Colo. RPC 3.7(a) "did not authorize the court to order [O'Malley] to withdraw from all representation"; and (6) O'Malley's disqualification resulted in "substantial hardship" to Good Life.

¶ 31    We next consider whether Good Life preserved each of these arguments for appeal. "Preservation is a threshold question" because "[w]e do not review issues that have been insufficiently

preserved." *Rinker v. Colina-Lee*, 2019 COA 45, ¶ 22, 452 P.3d 161, 167. But "[i]f a party 'presented to the trial court the sum and substance of the argument it now makes on appeal, we consider that argument properly preserved for appellate review.'" *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50, 532 P.3d 776, 788 (quoting *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010)).

¶ 32    Good Life says in its opening brief that it preserved its disqualification arguments by presenting them in its response to the disqualification motion. *See* C.A.R. 28(a)(7)(A) (An appellant must state in the opening brief "whether the issue was preserved, and if preserved, the precise location in the record where the issue was raised and where the court ruled."). Thus, in determining whether Good Life preserved its appellate arguments on disqualification, we consider Good Life's arguments in its response to the disqualification motion and the arguments it presented at the disqualification hearing.

¶ 33    Good Life presented five arguments in its response to the disqualification motion:

1. "[C]ourts have historically been highly cynical" of motions to disqualify opposing counsel.

2. WLCO failed to "allege any substantive content" in O'Malley's emails that, according to WLCO, demonstrated that O'Malley continued to act on Good Life's behalf even after he transferred his ownership in Good Life to his wife.

3. WLCO failed to describe the substance or relevance of the services agreement between Good Life and Chooze, which WLCO characterized in the disqualification motion as a "central document at issue" that O'Malley had signed on Good Life's behalf.

4. WLCO provided only "sparse allegations" that O'Malley was a "necessary witness."

5. Disqualification would result in substantial hardship to Good Life because O'Malley had a longstanding relationship with Good Life, it did not "have surplus counsel on the payroll," and it had already incurred fees and costs exceeding $100,000. (Good Life did not say that it had paid that sum, however.)

(Good Life also asserted that the disqualification motion would be moot if the court denied WLCO's motion to join Chooze as a third party. As noted below, the court later granted that motion.)

¶ 34    At the disqualification hearing, O'Malley argued, without referencing supporting legal authorities, that Colo. RPC 3.7's

> one purpose is to avoid jury confusion, and I don't see a jury. . . . I certainly believe that this Court is more than capable of determining facts and advocacy and not becoming confused like a naive juror would be confused. So I don't want to say it's insulting to the Court, but it does kind of seem like it.

He made no other references to juries or jurors, nor did he argue at the disqualification hearing that the court should permit him to represent Good Life during pretrial proceedings.

¶ 35    We note that Good Life does not argue that it preserved any of its disqualification arguments through the motion to modify deadlines in an order (the motion to modify) that it filed after the court entered the disqualification order. Good Life does not even mention the motion to modify in its appellate briefs.

¶ 36    In the motion to modify, Good Life, still represented by O'Malley, asked the court to defer the deadlines for O'Malley's submission of his withdrawal and Good Life's engagement of new

16

counsel.  Good Life presented several new arguments in the motion to modify, including that the court's application of Colo. RPC 3.7(a) to disqualify O'Malley was premature because it was not yet clear whether the case would be tried to a jury or to the court and attorney-witnesses cannot be barred from participating in pretrial proceedings under Colo. RPC 3.7(a).

¶ 37     Even though Good Life said in the motion to modify that it was not seeking reconsideration of the disqualification order, that is precisely what Good Life asked the court to do — revisit its ruling in the disqualification order that O'Malley must withdraw as Good Life's counsel within fourteen days from the date of the disqualification order.  "A party moving to reconsider must show more than a disagreement with the court's decision."  C.R.C.P. 121, § 1-15(11).  Motions to reconsider "must allege a manifest error of fact or law that clearly mandates a different result or other circumstance resulting in manifest injustice."  *Id.*  "[P]resentation of new arguments in a motion for reconsideration is improper." *Rinker*, ¶ 25, 452 P.3d at 167.

¶ 38     The court summarily denied the motion to modify.  Good Life neither appeals the court's order denying the motion to modify nor

otherwise argues in its opening brief that the court erred by doing so. For these reasons, we do not consider the arguments that Good Life raised only in the motion to modify.

¶ 39 Accordingly, Good Life did not preserve its arguments that disqualification was improper in the absence of prejudice to "any stakeholder" (although it preserved its "substantial hardship" argument) or that the court erred by disqualifying O'Malley from any further representation of Good Life in the case rather than only disqualifying him from representing Good Life at a jury trial.

¶ 40 We conclude, however, that O'Malley's argument at the disqualification hearing was minimally sufficient to preserve Good Life's contention that Colo. RPC 3.7(a) only applies to cases set for jury trials. "If a party raises an argument to such a degree that the court has the opportunity to rule on it, that argument is preserved for appeal." *Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶ 21, 436 P.3d 597, 600. Further, we consider Good Life's legal arguments that courts view disqualification motions with skepticism when the moving party also seeks the attorney's testimony and that *Garnett* is no longer good law.

### 4. The Law Concerning the Applicability of Colo. RPC 3.7(a) to Bench Trials, as Well as to Jury Trials

¶ 41     We begin our analysis of Good Life's argument that Colo. RPC 3.7(a) only applies in cases that will be tried to a jury by examining the text of Colo. RPC 3.7(a) and its comments.  Interpretation of rules involves questions of law, which we review de novo.  *Boudette v. State*, 2018 COA 109, ¶ 20, 425 P.3d 1228, 1231.  When construing a rule, we employ the same interpretive rules applicable when we analyze statutes, meaning that if a rule is "clear and unambiguous, we will interpret [it] to give effect to its plain language."  *Id.*

¶ 42     Colo. RPC 3.7(a) sets forth a general rule and three exceptions to that rule:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.

¶ 43    Significantly, the rule refers to "a trial" and not "a jury trial." Similarly, the comments to the rule do not refer to a jury. For example, comment 1 says that "[c]ombining the roles of advocate and witness can prejudice *the tribunal* and the opposing party and can also involve a conflict of interest between the lawyer and client," Colo. RPC 3.7(a) cmt. 1 (emphasis added), while comment 2 begins, "*The tribunal* has proper objection when *the trier of fact* may be confused or misled by a lawyer serving as both advocate and witness." Colo. RPC 3.7(a) cmt. 2 (emphasis added). The risks of potential prejudice to the opposing party and a conflict of interest between the lawyer and client can arise in bench trial cases, as well as in jury trial cases. Comment 4, which provides a gloss on the "substantial hardship" exception to the general rule, refers to "balancing . . . the interests of the client and those of *the tribunal and the opposing party.*" Colo. RPC 3.7(a) cmt. 4 (emphasis added).

¶ 44    A "tribunal" is an adjudicatory body, such as a court. *See, e.g., Colo. State Bd. of Med. Exam'rs v. Colo. Ct. of Appeals*, 920 P.2d 807, 814 (Colo. 1996) ("The court of appeals is a lower tribunal . . . ."); Black's Law Dictionary 1737 (12th ed. 2024) (defining "tribunal" as "[a] court of justice or other adjudicatory

20

body"); *see also People ex rel. Gallagher v. Hertz*, 608 P.2d 335, 339 (Colo. 1979) (holding that "a district attorney or those acting under him" are not a "tribunal").

¶ 45    A "trier of fact" can either be a judge, *see Dall. Ry. & Terminal Co. v. Bishop*, 153 S.W.2d 298, 301 (Tex. Civ. App. 1941), or a jury, *see State v. Barron*, 2022-Ohio-102, ¶ 72, 183 N.E.3d 470, 486 (Ct. App.); *see also* Black's Law Dictionary at 711 (A "factfinder may be the judge (in a bench trial) or a jury.").

¶ 46    At least one jurisdiction sought to limit the scope of the attorney-witness rule by adding a reference to "jury."  California's rule concerning attorney-witnesses enacted in 1989 was limited to a lawyer's role at a jury trial: "A member [of the bar] shall not act as an advocate *before a jury* which will hear testimony from the member."  Cal. R. Prof. Conduct 5-210 (emphasis added) (replaced with Rule 3.7 in 2018).  Moreover, the discussion following the rule said it was "intended to apply to situations in which the member knows or should know that he or she ought to be called as a witness in litigation in which there is a jury" and "is not intended to encompass situations in which the member is representing the

client in an adversarial proceeding and is testifying before a judge." Cal. R. Prof. Conduct 5-210, discussion.

¶ 47 California's inclusion of "before a jury" in its former Rule 5-210 suggests that an attorney-witness disqualification rule that does not expressly refer to a jury or jurors applies to attorneys' participation in cases involving either jury trials or bench trials. *Cf. Roane v. Archuleta*, 2022 COA 143, ¶ 52, 526 P.3d 220, 229 (reasoning that because, unlike certain other states' open records statutes, the Colorado open records statute does not contain an exception for record requests to a public entity that is an adverse party in pending litigation, a litigant against a public entity in Colorado may employ the state's open records statute to obtain documents from that entity during the pendency of the litigation), *aff'd*, 2024 CO 74, ___ P.3d ___.

¶ 48 Moreover, the policies underlying Colo. RPC 3.7 apply to jury trials and bench trials alike:

> Among the multitude of rationales for the rule, we have emphasized that "a lawyer who intermingles the functions of advocate and witness diminishes his effectiveness in both cases." We explained, "The client's case is subject to criticism that it is being presented through the testimony of an obviously

> interested witness who on that account is subject to impeachment, and, of equal importance, placed in the unseemly position of arguing his own credibility to the jury."

*Fognani*, 115 P.3d at 1272 (footnote omitted) (quoting *Williams*, 700 P.2d at 553). (*Fognani* did not resolve whether a lawyer may be disqualified under Colo. RPC 3.7 in a case set for a bench trial because a jury trial had already been set in that case. *See id.* at 1270; *see also People v. Ehrnstein*, 2018 CO 40, ¶ 16, 417 P.3d 813, 817 (stating in a criminal case that had already been tried to a jury that "[t]he overriding purpose of Colo. RPC 3.7 is to avoid prejudice associated with jury confusion").)

¶ 49    The Colorado Bar Association Ethics Committee noted in its Formal Opinion 78 that "[i]t is unclear in Colorado whether the advocate-witness disqualification rule is relaxed in non-jury proceedings." Colo. Bar Ass'n Ethics Comm., Formal Op. 78, at 3 (revised Oct. 20, 2012). That opinion cited cases from other jurisdictions on both sides of the issue. *See United States v. Johnston*, 690 F.2d 638, 644 (7th Cir. 1982) (noting "we would expect that a judge would not be swayed by the prominence or prestige of a government prosecutor in assessing the credibility of

his testimony," but that "the maintenance of public confidence in the ultimate fairness of judicial proceedings is no less applicable to proceedings before a judge than it is to those before a jury"); *Saline River Props., LLC v. Johnson Controls, Inc.*, No. 10-10507, 2011 WL 4916688, at *3 (E.D. Mich. 2011) (unpublished opinion) (denying motion to disqualify because, "[u]nlike a jury, this Court is capable of distinguishing between [the attorney-witness's] trial testimony and any statements he would make as an advocate"); *In re Leventhal*, No. 10 B 12257, 2012 WL 1067568, at *5 (Bankr. N.D. Ill. Mar. 22, 2012) (unpublished opinion) (denying motion to disqualify lawyer who was also a witness because the trial was to the court and not to a jury); *Mt. Rushmore Broad., Inc. v. Statewide Collections*, 42 P.3d 478, 482 (Wyo. 2002) (holding that Wyo. R. Prof. Conduct, Rule 3.7 — which is identical to Colo. RPC 3.7 — "does not make any distinctions between jury or bench trials").

¶ 50    We reject Good Life's argument that Colo. RPC 3.7 only applies in jury trial cases.  Our decision finds support not only in the plain language of the rule and its comments, but also in out-of-state authorities.  The supreme court's explanation in *Fognani* of the rationale underlying Colo. RPC 3.7 is consistent with other

24

jurisdictions' analyses of their analogous rules. *See, e.g., Rizzuto v. De Blasio*, No. 17-CV-7381, 2019 WL 1433067, at *9 (E.D.N.Y. Mar. 29, 2019) (unpublished opinion) (explaining that disqualification of counsel cannot be avoided by conducting a bench trial rather than a jury trial because "[t]he purpose of disqualification under the rule is not merely logistical, but is to ensure that the attorney can provide representation that is uncompromised by his involvement in the underlying facts of the case, preserving his objectivity and the integrity of the adversary process"); *Merch. & Gould, P.C. v. Premiere Glob. Servs., Inc.*, Civ. No. 09-03144, 2010 WL 11646623, at *5 (D. Minn. Nov. 15, 2010) (unpublished opinion) ("Rule 3.7 does not differentiate between jury and bench trials for the purpose of determining whether a lawyer is likely to be a necessary witness at trial or whether the lawyer should be precluded from acting as both advocate and witness. . . . [E]ven if the trier of fact, in this case [a judge], would not be confused by [the attorney's] simultaneous role as witness and advocate at trial, defendants are entitled to a proceeding free of the taint that can result from [the attorney's] dual roles. . . . It is prejudicial to [the adverse parties] to burden them with the impossible task of discerning when [the attorney] is acting

25

as an advocate and when he is acting as a witness in more subtle settings, such as taking and defending depositions and arguing evidentiary motions."); *Mt. Rushmore Broad., Inc.*, 42 P.3d at 482 (affirming the court's decision to disqualify the attorney-witness in a case set for a bench trial because of concerns that the attorney would "challeng[e] the credibility" of the adverse party's witnesses while, "simultaneously, vouching for his own credibility" and the attorney's testimony "would adversely impact the fairness of the trial"); *see also Su v. Sotheby's, Inc.*, No. 17-CV-4577, 2021 WL 3537189, at *3 n.5 (S.D.N.Y. Aug. 11, 2021) (unpublished opinion) ("Even during a bench trial, . . . there can be good reasons to separate the roles of advocate and witness.").

¶ 51 We acknowledge that, as Good Life notes and as the supreme court has observed, "courts have historically been highly cynical of motions to disqualify opposing counsel, noting that such motions are often dilatory or tactical devices." *Fognani*, 115 P.3d at 1272. But the record shows that WLCO did not file the disqualification motion to delay the case or as a tactic; WLCO did not attempt to force Good Life to obtain new counsel for "purely strategic purposes." *United States v. Google LLC*, 698 F. Supp. 3d 876, 885

(E.D. Va. 2023) (quoting *Rd. King Dev., Inc. v. JTH Tax LLC*, 540 F. Supp. 3d 554, 560 (E.D. Va. 2021)).

¶ 52　　Notably, on appeal, Good Life does not challenge the court's finding that O'Malley was a necessary witness.  O'Malley's role as a necessary witness undercuts Good Life's suggestion that WLCO filed the disqualification motion as a cynical litigation tactic.  As noted below, Good Life itself — while represented by O'Malley — identified O'Malley in its C.R.C.P. 26(a)(1) disclosures as a potential witness regarding "all aspects of the business operations and financial transactions" of Good Life.  Moreover, O'Malley conceded at the disqualification hearing that he possessed knowledge, "directly or through [his] wife," of the relationship between Good Life and Chooze, the termination of the contract between Good Life and Chooze, "the sale of product, [Good Life's] entrepreneurial activities, [and] the product that was taken and stolen in [Good Life's] estimation" — all significant issues in the case.

¶ 53　　The testimony of O'Malley's wife at the disqualification hearing further confirmed that O'Malley was a necessary witness.  She said that she was not "intimately involved" with Good Life's contract with Chooze "to manufacture and package its products in 2017," she

only became Good Life's 100% owner in April 2020, and O'Malley was Good Life's "primary contact" with Chooze. The testimony of O'Malley and his wife demonstrates that the disqualification order was solidly grounded in the facts.

¶ 54 Further, we reject Good Life's argument that *Garnett* — the disqualification case cited in the disqualification order — is "inapplicable" because "it interpreted an obsolete ethics rule and is factually distinct." Although the *Garnett* court applied Disciplinary Rule 5-102 of the Code of Professional Responsibility — the predecessor to Colo. RPC 3.7 — the policies articulated in that case are consistent with the policies underlying the current rule discussed above. *See Garnett*, 725 P.2d at 1153, 1155 (affirming suspension of a lawyer for, among other violations of the Colorado Code of Professional Responsibility, "continuing employment in a case when it was obvious that he ought to be called as a witness," where the lawyer's testimony did not "relate solely to an uncontested matter, a matter of formality, or the nature or value of legal services," and his refusal to accept employment would not have "work[ed] a substantial hardship on the clients because of the distinctive value of the lawyer in the particular case"); *see also*

*Jones*, 610 F. Supp. at 355 (explaining that the "applicable provisions of the Code [of Professional Responsibility] are quite similar to the Rules [of Professional Conduct] insofar as disqualification of the testifying attorney is concerned[, although] [t]he Rules do depart from the Code's provision requiring disqualification of the testifying attorney's entire firm"); 2 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 36.04, at 36-7 to 36-8 (4th ed. 2020) (noting that Rule 3.7(a) is "more carefully crafted than its predecessors in the Model Code of Professional Responsibility," which "employed vague and overbroad language in stating the circumstances that would trigger disqualification," resulting in disqualification of lawyers even "if the lawyer's testimony was little more than relevant and admissible").

¶ 55    For these reasons, we hold that Colo. RPC 3.7 can apply to cases set for a bench trial, as well as to jury trial cases.  We need not consider whether the court erred by applying Colo. RPC 3.7 to the nontrial portions of this case, however, because, at the disqualification hearing, O'Malley made only the sweeping argument that the rule only applies to cases in which "a naive juror would be confused."  He did not argue, aside from asserting substantial

hardship, that disqualification in this non-jury trial case would be inappropriate, nor did he ask the court to permit him to represent Good Life during pre- or post-trial proceedings even if he was disqualified from representing Good Life at trial. *See, e.g., People in Interest of S.G.*, 91 P.3d 443, 450 (Colo. App. 2004) (Colo. RPC 3.7(a) "has been interpreted to permit a lawyer who may be a necessary witness to continue to represent a client 'in all litigation roles short of trial advocacy.'" (quoting Colo. Bar Ass'n Ethics Comm., Formal Op. 78 (revised 1997))).

### 5. The Court Did Not Abuse Its Discretion by Finding that Good Life Failed to Satisfy the "Substantial Hardship" Test

¶ 56 Good Life next contends that the court misapplied Colo. RPC 3.7's "substantial hardship" exception when it found that O'Malley's disqualification would not "work a substantial hardship" on Good Life. It argues on appeal, as it did in its response to the disqualification motion and at the disqualification hearing, that O'Malley's withdrawal as Good Life's counsel would result in a "substantial hardship" to Good Life because O'Malley was representing Good Life on a contingent fee basis and hiring another

attorney would require Good Life to pay up-front legal fees to the new attorney.

¶ 57 O'Malley's wife testified at the disqualification hearing that she had contacted "a number of attorneys" regarding representation of Good Life, but that none of them worked on contingency and "their hourly rates were higher than [O'Malley's] hourly rates." On cross-examination, she acknowledged her understanding that lawyers are generally paid by the hour in breach of contract and civil theft cases. In addition, she testified that she did not pay her husband for other legal work he performed on behalf of Good Life because it would be "stupid" for her, as president of Good Life, to do so.

¶ 58 The court made the following findings of fact in rejecting Good Life's substantial hardship argument:

> Mrs. O'Malley [the sole owner of Good Life as of April 2020] testified that [Good Life] had a difficult time finding counsel that would take the case on a contingent basis which Mr. O'Malley has done. The Court finds that an attorney who accepts employment in contemplated litigation when it is obvious that he ought to be called as a witness cannot claim that his disqualification is a hardship. . . . The Court finds, based upon the testimony from Mr. O'Malley and Mrs.

31

O'Malley that it should have been obvious to Mr. O'Malley that he would be a necessary witness in this matter when he filed the Complaint.

¶ 59 We construe the substantial hardship exception to Colo. RPC 3.7 narrowly. *See Brown v. Daniel*, 180 F.R.D. 298, 302 (D.S.C. 1998). "The financial burden on the client of replacing the attorney, if *combined with other circumstances*, as such, *may* be sufficient to create an exception" under Colo. RPC 3.7. *Fognani*, 115 P.3d at 1275 (emphasis added). When considering whether an attorney-witness should not be disqualified under the substantial hardship exception, "we consider all relevant factors in light of the specific facts before the court, including the nature of the case, financial hardship, giving weight to the stage in the proceedings, and the time at which the attorney became aware of the likelihood of his testimony." *Id.* "[W]e also consider whether the client has secured alternative representation." *Id.*

¶ 60 Good Life contends it was "manifestly unreasonable for the court to find no substantial hardship" because Good Life's "financial hardship was obvious and substantial." But Good Life's need to pay a new attorney on an hourly basis alone is insufficient

to establish that the substantial hardship exception precluded O'Malley's disqualification. *See Green v. Moog Music, Inc.*, No. 21-cv-00069, 2021 WL 4130530, at *3 (W.D.N.C. Sept. 10, 2021) (unpublished order) (holding that, where the opposing party filed the disqualification motion "early in the development of this case," the substantial hardship exception to Rule 3.7 was not satisfied even though the attorney-witness took the case on a contingency fee basis and the client claimed to lack the means to pay another attorney); *Est. of Andrews v. United States*, 804 F. Supp. 820, 829 (E.D. Va. 1992) ("It is . . . well-settled that the expense and possible delay inherent in any disqualification of counsel are insufficient to satisfy the 'substantial hardship' exception to the witness-advocate rule. . . . [W]ere this not so, the exception would swallow the rule.").

¶ 61 The evidence presented at the disqualification hearing showed that O'Malley was not charging Good Life on an hourly basis because of his personal connections to the company, including his former roles as part owner and president of Good Life, which he shifted to his wife before Good Life filed its lawsuit against WLCO. Yet those same personal connections also made him a likely witness regarding the material facts underlying Good Life's claims against

WLCO. A party cannot argue against disqualification of its counsel when the lawyer's intimate ties to the client are both the reason for his disqualification and also the reason why the lawyer is providing the favorable financial terms that, according to the client, bar disqualification under the substantial hardship exception.

¶ 62 Under Good Life's reasoning, a lawyer who formerly owned and operated a business, transferred those roles to a close friend or relative, and charged the business below-market legal fees because of those personal ties could never be disqualified, even if the lawyer was the sole witness in the case in which the lawyer represented the business. This scenario would, as the court warned in *Estate of Andrews*, allow the substantial hardship exception to "swallow the [disqualification] rule" in every case in which a small business was represented by a current or former owner or officer. 804 F. Supp. at 829.

¶ 63 Further, the other facts that the court said supported O'Malley's disqualification confirm that Good Life failed to show that O'Malley's disqualification would cause it substantial hardship. The record shows that, from the inception of the litigation, O'Malley possessed actual knowledge of the importance of his testimony. For

example, in its C.R.C.P. 26(a)(1) disclosures (which O'Malley submitted), Good Life listed him as a person "likely to have discoverable information relevant to the claims and defenses of any party": "O'Malley. (1) Co-owner of Good Life, Colorado LLC until April 2020 and (2) counsel for Good Life, Colorado LLC. . . . Mr. O'Malley has information regarding all aspects of the business operations and financial transactions of Good Life, Colorado LLC." Thus, we agree with the court that Good Life could not avoid O'Malley's disqualification under the substantial hardship exception to Colo. RPC 3.7(a).

¶ 64 In sum, we hold that the court did not abuse its discretion by granting the disqualification motion.

### B. The Court Did Not Err by Denying the Motion to Vacate the Dismissal Order

¶ 65 We next consider Good Life's argument that the court erred by denying the motion to vacate the dismissal order.

¶ 66 Even though the court had disqualified him from further representation of Good Life, and he had withdrawn as Good Life's counsel, on March 8, 2024, O'Malley filed the motion to vacate the dismissal order on Good Life's behalf.

¶ 67    Good Life primarily asserted in the motion to vacate the dismissal order that the court should not have granted the dismissal motion because WLCO failed to comply with C.R.C.P. 41(b)(1) — which addresses dismissals for failure to prosecute — and C.R.C.P. 121, section 1-10(1) — which requires that a party seeking to dismiss a case for failure to prosecute provide the opposing party with "due notice" of the dismissal motion.  In the alternative, Good Life argued that the court should set aside the dismissal order under C.R.C.P. 60(b)(1), (2), and (3) because the filing of the dismissal motion surprised Good Life, *see* C.R.C.P. 60(b)(1); WLCO obtained the dismissal order through fraud and misconduct, *see* C.R.C.P. 60(b)(2); and the dismissal order is void for lack of "due notice" to Good Life, C.R.C.P. 60(b)(3).

¶ 68    On March 20, 2024, the court entered an order (the first March 20 order) denying the motion to vacate the dismissal order.

¶ 69    On appeal, Good Life contends that the dismissal order was void because WLCO never gave Good Life the required due notice, the dismissal order was improper because WLCO was equitably estopped from seeking dismissal of Good Life's claims, and WLCO failed to support the dismissal motion with sufficient facts or legal

authority. We disagree with Good Life that the court erred by entering the dismissal order.

### 1. The Applicable Rule

¶ 70 Before we consider the merits of Good Life's arguments regarding the motion to vacate the dismissal order, we must first determine under which Rule of Civil Procedure Good Life submitted that motion.

¶ 71 C.R.C.P. 60(b) provides a remedy for a party seeking to set aside a final judgment. *See* C.R.C.P. 60(b) ("On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding" for the reasons specified in the rule.). "A final judgment is one 'which ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding.'" *Wilson v. Kennedy*, 2020 COA 122, ¶ 7, 490 P.3d 855, 857 (quoting *Harding Glass Co. v. Jones*, 640 P.2d 1123, 1125 n.2 (Colo. 1982)).

¶ 72 "A dismissal with prejudice is a final judgment; it ends the case and leaves nothing further to be resolved concerning the dispute between the parties." *Id.* (quoting *Foothills Meadow v.*

*Myers*, 832 P.2d 1097, 1098 (Colo. App. 1992)); *see also In re People in Interest of C.J.T.*, 2023 CO 60, ¶ 26, 546 P.3d 1150, 1156 ("As a general matter, once a case is dismissed, neither the action nor the parties remain within the court's jurisdiction," although the court "retains jurisdiction to enforce its prior orders."). Because the dismissal order resolved all of Good Life's claims in this action, it was a final judgment. *See Foothills Meadow*, 832 P.2d at 1098.

¶ 73 We acknowledge that, seven days after the entry of the dismissal order, WLCO filed a motion to dismiss its third-party claims against Chooze, which had never been served. The next day, the court entered an order (the Chooze order) dismissing WLCO's claims against Chooze. Upon the entry of the Chooze order, all the claims in the case had been resolved.

¶ 74 Because the dismissal order resolved all of Good Life's claims, it is unclear why the court separately entered the Chooze order, as WLCO had brought Chooze into the case as an indispensable third party to avoid a possible double payment to Good Life. Once the court dismissed Good Life's claims with prejudice, there was no risk that Good Life could recover the same damages from WLCO and Chooze. For this reason, the dismissal order not only resolved Good

Life's claims, but it also effectively resolved WLCO's claims against Chooze. In any event, it is of no consequence to our analysis whether the final judgment in this case was the dismissal order or the Chooze order.

¶ 75 Once a court enters a final judgment, the party against which the judgment was entered can seek relief under C.R.C.P. 60 based on a clerical error, C.R.C.P. 60(a), or on the following grounds:

> (1) Mistake, inadvertence, surprise, or excusable neglect; (2) fraud . . . , misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

C.R.C.P. 60(b). A judgment entered by default is void "if the defaulting party's due process rights were violated because of a lack of notice." *First Nat'l Bank of Telluride v. Fleisher*, 2 P.3d 706, 713 (Colo. 2000).

¶ 76 In the motion to vacate the dismissal order, Good Life sought the type of postjudgment relief available under C.R.C.P. 60(b). No legal citation is required for the obvious point that C.R.C.P. 41(b)(1)

and C.R.C.P. 121, section 1-10(1) do not provide a remedy for a party seeking to set aside a judgment.

¶ 77 A party must file a motion to set aside a judgment for mistake, fraud, or misconduct "not more than 182 days after the judgment, order, or proceeding was entered or taken." C.R.C.P. 60(b). The courts strictly adhere to that time limit. *Atlas Constr. Co. v. Dist. Ct.*, 589 P.2d 953, 955 (Colo. 1979). Courts lack authority to provide relief under C.R.C.P. 60(b)(1) and (b)(2) after that time has lapsed. *Murray v. Bum Soo Kim*, 2019 COA 163, ¶ 12, 461 P.3d 624, 627.

¶ 78 In contrast, a party may file a C.R.C.P. 60(b)(3) motion at any time because a void judgment is "without effect." *Burton v. Colo. Access*, 2018 CO 11, ¶ 35, 428 P.3d 208, 214. "The burden to establish that a judgment is void is on the party claiming the judgment is void, and that movant must demonstrate the invalidity of the judgment by clear and convincing evidence." *Minshall v. Johnston*, 2018 COA 44, ¶ 12, 417 P.3d 957, 960.

¶ 79 Because we conclude that C.R.C.P. 60(b) governed the motion to vacate the dismissal order, we must examine Good Life's arguments in such motion through the lens of that rule.

## 2. Standard of Review

¶ 80 "[T]he decision to grant relief under C.R.C.P. 60(b) is generally within the trial court's discretion and is reviewed for abuse of discretion." *Goodman Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 314 (Colo. 2010). But a different standard of review applies when a party seeks to set aside a void judgment under C.R.C.P. 60(b)(3).

¶ 81 "[W]here the motion alleges that the judgment attacked is void, the trial court has no discretion. The judgment either is void or it isn't and relief must be afforded accordingly." *In re Marriage of Stroud*, 631 P.2d 168, 170 n.5 (Colo. 1981) (citation omitted). "[W]e review de novo a trial court's decision to grant relief from a judgment pursuant to C.R.C.P. 60(b)(3) on the basis that it is void . . . ." *Goodman Assocs., LLC*, 222 P.3d at 314.

## 3. Analysis

### a. Good Life Received "Due Notice" of the Dismissal Motion

¶ 82 Good Life argued in the motion to vacate the dismissal order that it did not receive "due notice" of the dismissal motion and, therefore, was unaware that it needed to engage new counsel to

respond to it. For this reason, Good Life asserts that the dismissal order was void and must be set aside under C.R.C.P. 60(b)(3).

¶ 83 Because Good Life was an unrepresented limited liability company at the time WLCO filed the dismissal motion, and because the court had previously disqualified O'Malley from further representation of Good Life, we review how an adverse party must provide notice of new court filings to an unrepresented limited liability company that was formerly represented by counsel.

¶ 84 "[E]very written motion other than one which may be heard ex parte . . . shall be served upon each of the parties." C.R.C.P. 5(a). Service may be made by "[m]ailing a copy to the last known address of the person served." C.R.C.P. 5(b)(2)(B).

¶ 85 WLCO served the dismissal motion on Good Life by mailing it to O'Malley, Good Life's registered agent, at a Peoria Street address in Denver. Good Life's complaint contained a single address for Good Life — that Peoria Street address. *See* C.R.C.P. 11(a) ("The attorney's address and that of the party [filing the initial pleading] shall . . . be stated" in the pleading.). Moreover, in a periodic report filed with the Colorado Secretary of State, Good Life identified the Peoria Street address as the street address of its registered agent. If

Good Life believed it would not receive mail sent to the only address that it included in its complaint pursuant to C.R.C.P. 11(a), it should have updated the court records so the court and WLCO's counsel would know Good Life's correct mailing address.

¶ 86 Because WLCO served the dismissal motion on Good Life by mailing a copy to Good Life's address found in Good Life's complaint, we perceive no error in the court's finding in the first March 20 order that Good Life "was properly served with the motion to dismiss." Thus, we reject Good Life's argument that the dismissal order was void for failure of "due notice."

### b. WLCO Was Not Equitably Estopped from Obtaining the Dismissal Order

¶ 87 Good Life does not tell us under which subsection of C.R.C.P. 60(b) it seeks reversal of the first March 20 order on equitable estoppel grounds. In its opening brief, Good Life asserts that WLCO acted inequitably by representing to the court, following entry of the disqualification order, that it had "no means to properly confer" with Good Life on the dismissal motion. Good Life supports this argument by pointing to the email exchanges between WLCO's counsel and O'Malley before the court disqualified O'Malley.

43

¶ 88    Good Life does not explain why WLCO's counsel was required to confer with a lawyer whom the court had previously disqualified from further representation of Good Life. Further, Good Life does not explain how counsel for WLCO's conferral with Good Life's former attorney would have staved off entry of the dismissal order, when it only obtained new counsel after this appeal was fully briefed. Moreover, Good Life does not cite any authority holding that a judgment may be set aside under C.R.C.P. 60(b) because counsel for the party that obtained the judgment did not, before moving for entry of the judgment, confer with an unrepresented adverse limited liability company that could not appear pro se.

¶ 89    For these reasons, we reject Good Life's equitable estoppel argument.

c.    WLCO's Alleged Failure to Plead Supporting Facts or Authority in the Dismissal Motion Is Not Grounds for Setting Aside the Dismissal Order

¶ 90    Good Life also argues that the court should have granted the motion to vacate the dismissal order because WLCO did not plead facts or authority to support the dismissal motion. As best we can tell, this argument rests on Good Life's allegations that WLCO falsely represented to the court that it had properly served Good

44

Life with the dismissal motion. As we explain above, we reject Good Life's argument that WLCO did not properly serve Good Life when it mailed a copy of the dismissal motion to the address that Good Life had provided to the court and WLCO in its complaint.

¶ 91 Further, Good Life contends that it did not require counsel in the case until "its next court appearance." We disagree. A party whose counsel has been disqualified, and that cannot appear pro se, cannot be heard to complain that the court granted a motion against it by default because the party apparently decided to defer hiring new counsel until the "next court appearance." Such a party may never receive notice that the court granted the motion unless and until the party engages new counsel. Moreover, on January 8, 2024, the date on which WLCO filed the dismissal motion, Good Life was in open defiance of the court's order that it hire new counsel within thirty days of September 19, 2023.

¶ 92 For these reasons, we conclude that Good Life was not entitled to an order setting aside the dismissal order under C.R.C.P. 60(b) and, therefore, the court did not err by denying the motion to vacate the dismissal order.

### C. The Court Did Not Err by Declining to Consider the Motion to Vacate the Default Judgment Order

¶ 93 In the motion to vacate the default judgment order, Good Life asked the court to vacate the order granting WLCO's motion to set aside the default judgment and to impose sanctions against WLCO for allegedly misrepresenting that it was pro se at the time Good Life obtained the default judgment. To support this argument, Good Life cited, among other sources of information, WLCO's website, Department of Revenue license records, Secretary of State business records, and court filings. Good Life suggested that it was unaware of this information when it responded to WLCO's motion to set aside the default judgment. But Good Life did not explain why it could not have accessed this publicly available information at that time.

¶ 94 In analyzing the motion to vacate the default judgment order, we consider the law governing motions for reconsideration. Good Life's motion was a motion for reconsideration because, in such motion, Good Life explicitly asked the court to revisit its order granting WLCO's motion to set aside the default judgment. *See* Black's Law Dictionary at 1213 (defining a "motion for reconsideration" as a motion "requesting a review of all or part of a

ruling or decision before it becomes final"). "A trial court's decision on a motion to reconsider may not be reversed on appeal absent an abuse of discretion." *Steele v. Law*, 78 P.3d 1124, 1128 (Colo. App. 2003).

¶ 95 Motions to reconsider "shall be filed within 14 days from the date of the order [for which reconsideration is sought], unless the party seeking reconsideration shows good cause for not filing within that time." C.R.C.P. 121, § 1-15(11). Because Good Life filed the motion to vacate the default judgment order more than one year after the court set aside the default judgment, the motion to vacate the default judgment order was untimely unless Good Life could establish good cause for not filing it within fourteen days.

¶ 96 Good Life did not present a developed good cause argument — or even refer to the good cause exception — in the motion to vacate the default judgment order. Good Life may have attempted to argue good cause when it claimed that it "could not [have] discover[ed]" the publicly available information it cited as evidence of WLCO's alleged misrepresentation. But as noted above, Good Life does not explain why it could not have accessed the public documents

containing such information at the time it responded to WLCO's motion to set aside the default judgment.

¶ 97 Moreover, Good Life did not explain why the information it cited showed that WLCO had litigation counsel at the time Good Life obtained the default judgment. Good Life argued that WLCO had litigation counsel when it claimed to be pro se because, at that time, WLCO's individual owners were plaintiffs in a separate civil case to which WLCO was not a party. In support of this assertion, Good Life identified the attorneys who represented WLCO's individual owners in that case, although Good Life did not link those attorneys to WLCO, and cited the case in which the individual owners were plaintiffs.

¶ 98 Good Life generally stated in the motion to vacate the default judgment order that the court should disregard the distinctions between WLCO and its three owners because of "imputed knowledge, imputed interests, and agency . . . [and] on-point alter ego precedent," such as *In re Phillips*, 139 P.3d 639 (Colo. 2006). But Good Life failed to develop its argument that WLCO was the alter ego of its individual owners and, therefore, that the owners' litigation attorneys in another case were also WLCO's litigation

48

attorneys in this case.  For example, Good Life did not address the factors of the alter ego test in Colorado.  *See Sedgwick Props. Dev. Corp. v. Hinds*, 2019 COA 102, ¶ 32, 456 P.3d 64, 70 ("In determining whether a corporate entity is the alter ego of the person or entity in issue, courts consider a variety of factors, including whether (1) the corporation is operated as a distinct business entity; (2) funds and assets are commingled; (3) adequate corporate records are maintained; (4) the nature and form of the entity's ownership and control facilitate misuse by an insider; (5) the business is thinly capitalized; (6) the corporation is used as a 'mere shell'; (7) legal formalities are disregarded; and (8) corporate funds or assets are used for noncorporate purposes.").  Merely saying that individuals are alter egos of a corporate entity does not make it so.

¶ 99    In any event, Good Life failed to establish good cause for filing the motion to vacate the default judgment order well past the fourteen-day deadline for submitting motions for reconsideration.  *See* C.R.C.P. 121, § 1-15(11).

¶ 100   For these reasons, we hold that the court did not abuse its discretion by denying the motion to vacate the default judgment order.

## D.    Joinder of Chooze

¶ 101    Good Life argues in its opening brief that the court erred by joining Chooze as a third party because the joinder of Chooze was inconsistent with the civil theft statute, *see* § 18-4-405, and because WLCO did not establish the necessary prerequisites for joinder.  But in its reply brief, Good Life concedes that its joinder argument became moot when the court dismissed WLCO's claims against Chooze.  Because "[a]ppellate courts will not render opinions on the merits of appeals when issues presented in litigation become moot because of subsequent events," *Campbell v. Meyer*, 883 P.2d 617, 618 (Colo. App. 1994), we do not consider whether the court erred by joining Chooze.

## E.    Attorney Fees

¶ 102    Both parties request an award of their respective attorney fees and costs.  Good Life asks us to direct the district court to award Good Life "all attorney fees, costs, and related expenses after December 17, 2022, to be trebled as exemplary damages and/or sanctions" against WLCO and its counsel because WLCO allegedly "defrauded the court."  Good Life fails to cite any legal authority in support of its request, however.

50

¶ 103    WLCO seeks an award of its attorney fees and costs against Good Life pursuant to C.A.R. 38(a) and (b) and attorney fees against O'Malley pursuant to section 13-17-102(2), C.R.S. 2024, because Good Life's appeal is frivolous "as a result of the untimely and incomplete Notice of Appeal" and because its legal arguments lack substantial justification.  *See* § 13-17-102(2) ("Subject to the limitations set forth elsewhere in this article, in any civil action of any nature commenced or appealed in any court of record in this state, the court shall award, by way of judgment or separate order, reasonable attorney fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification."); C.A.R. 38(b) ("If the appellate court determines that an appeal or cross-appeal is frivolous, it may award damages it deems appropriate, including attorney fees, and single or double costs to the appellee or cross-appellee.").

¶ 104    For the reasons explained above, we reject Good Life's argument that WLCO defrauded the court and deny Good Life's request for attorney fees and costs.  In addition, Good Life's request fails because it did not cite supporting legal authority.  *See In re*

*Marriage of Wright*, 2020 COA 11, ¶ 39, 459 P.3d 757, 765 (denying

a party's request for appellate attorney fees "because he has failed

to cite any legal authority for the request"); C.A.R. 39.1 ("If attorney

fees are recoverable for the appeal, the principal brief of the party

claiming attorney fees must include a specific request, and explain

the legal and factual basis, for an award of attorney fees.").

¶ 105    We also deny WLCO's request for attorney fees arising from

the alleged deficiencies in Good Life's notice of appeal.  As noted

above, we reject WLCO's argument that the notice of appeal was

untimely and incomplete.  Although a closer call, we also decline to

award WLCO attorney fees premised on Good Life's appellate

arguments.  Good Life's assertion that the court erred by entering

the disqualification order does not lack substantial justification

because it raises nonfrivolous, novel issues of law in this state —

whether Colo. RPC 3.7(a) can apply in non-jury cases and the

application of the substantial hardship exception where the

attorney-witness provides favorable financial terms to the client

because of the attorney's personal ties to the client.

¶ 106    "Standards for determining whether an appeal is frivolous

should be directed toward penalizing egregious conduct without

deterring a lawyer from vigorously asserting his client's rights." *Mission Denver Co. v. Pierson*, 674 P.2d 363, 365 (Colo. 1984). For this reason, we only impose sanctions in "clear and unequivocal cases when the appellant presents no rational argument, or when the appeal is prosecuted for the sole purpose of harassment or delay." *SG Ints. I, Ltd. v. Kolbenschlag*, 2019 COA 115, ¶ 42, 452 P.3d 1, 10.

¶ 107    Although we reject Good Life's weak appellate arguments regarding the March 20 orders, we cannot say that those arguments were so lacking in legal support that they were not rational or that Good Life interposed them to harass WLCO or to delay resolution of the case. Accordingly, we decline to award attorney fees to WLCO.

¶ 108    Because we affirm, however, WLCO is entitled to an award of its costs incurred on appeal. *See* C.A.R. 39(a)(2) ("[I]f a judgment is affirmed, costs are taxed against the appellant."). The district court shall determine the amount of such costs. *See In re Marriage of Capparelli*, 2024 COA 103M, ¶ 38, ___ P.3d ___, ___.

### III.    Disposition

¶ 109    The disqualification order and the March 20 orders are affirmed.

JUDGE J. JONES and JUDGE SULLIVAN concur.